**John O. MURRIN, III and Law–Link, Corp., Plaintiffs,**

v.

**MIDCO COMMUNICATIONS, INC., a/k/a Midcontinent Corporation, and Does I through IV, inclusive, and Bruce Davis, Defendants.**

**Civ. No. 4–89–733.**

United States District Court, D. Minnesota, Fourth Division.

Dec. 15, 1989.

---

**1196**

John O. Murrin, III, Murrin Metropolitan Attys. at Law, David J. Goldman, Minneapolis, Minn., for plaintiffs.

Michael Nekich, Leonard, Street & Deinard, Minneapolis, Minn., for defendant Midco Communications.

Mark E. Herlihy, Skadden, Arps, Slate, Meagher & Flom, Washington, D.C., for defendant Bruce Davis.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on plaintiffs' motion for a preliminary injunction. Plaintiffs have a service mark in the phrase "dial L–A–W–Y–E–R–S" and seek to enjoin the assignment of the 800 number which spells LAWYERS.

FACTS

I. The Parties

A. *John O. Murrin and Law–Link Corporation*

Plaintiff John O. Murrin is an attorney practicing in Minnesota. At some point between June and September 1978, Murrin received rights to the telephone number (612) 529–9377 and began advertising his law firm, then called Metropolitan Legal Clinic, using the phrase "Dial LAWYERS." Soon thereafter, Murrin registered the phrase "Dial LAWYERS," with dots between each letter for the word "lawyers," as a service mark. Plaintiffs' Exh. 1.[1]

Murrin has since formed the Law–Link Corporation (Law–Link) and assigned Law–Link the rights to use the "Dial LAWYERS" mark. Law–Link provides marketing and billing services to a network of "affiliated" law firms. Murrin describes this network as "embryonic ... but real." Transcript at 15. It presently consists of four small law firms in Minnesota.[2] The

---

1. Five years after the date of registration, Murrin filed an affidavit of continuous use and his mark is now "incontestable," as that term is used at 15 U.S.C. § 1065. *See* Plaintiffs' Exh. 2.

2. Law–Link claimed to be developing affiliations with attorneys in South Dakota. The evidence, however, demonstrated only that during the pendency of this suit Law–Link contacted one South Dakota attorney with whom it had

firms pay Law–Link eighteen percent of their gross receipts or $400, whichever is greater, each month in exchange for referrals generated from the "Dial LAWYERS" ads. Plaintiffs' Exh. 27 (Law–Link Affiliation Agreement); Transcript at 258. Neither Law–Link nor Murrin monitors the quality of the legal work done by the Law–Link affiliates. Transcript at 235.

Law–Link's advertisements do not name any law firm. Instead, the ads use the phrase "Dial LAWYERS" to identify the source of services. For example, in some commercials Murrin will introduce an attorney affiliated with Law–Link as an attorney for "Dial LAWYERS". The focus of the ads is clearly on having consumers identify "Dial LAWYERS" as a source for legal services. The ads feature a deep voice saying "Dial LAWYERS" and then spelling the word "lawyers" accompanied by the sound of those letters being dialed on a touch tone phone.[3] The number 529–9377 is never spoken or shown. In print or television ads, the letters in the word "lawyers" are always separated by dots or hyphens in a manner consistent with Murrin's registered service mark.

### B. *Bruce Davis*

Davis is a New York attorney who received the rights to the telephone number (212) LAWYERS sometime between the summer of 1976 and the spring of 1977. Davis advertised his firms, which have had various names, using spelling of the phone number—(212) LAWYERS, Dial LAWYERS, "Dial the word LAWYERS on your phone," etc. Murrin apparently concedes that Davis' use of the phrase "Dial LAWYERS" provides him with common law rights in that mark which antedate Murrin's registration. Davis is thus able to continue using the mark within the geographic area of his prior use. *See Wrist–Rocket Mfg. Co. v. Saunders Archery Co.,*

578 F.2d 727, 730 (8th Cir.1978); 2 McCarthy, *Trademarks and Unfair Competition* § 26:19.

There is a dispute about the geographic extent of Davis' prior use. Murrin contends that Davis' use did not extend beyond the New York state boundary because Davis' firm could not practice outside of New York until three or four years ago when Davis formed a partnership with an attorney licensed to practice in New Jersey. Transcript at 64–65. Davis argues that his prior use should not be so limited because he had been associating himself with counsel in New Jersey on a case-by-case basis since 1977. Transcript at 134–35. Davis further argues that New York City's metropolitan area must be considered an integrated economic unit. During the years since 1977, Davis has acquired the 529–9377 telephone number in five area codes covering most of the New York City metropolitan area.

In most important respects, Davis' ads are similar to Murrin's. The two notable differences are that the ads name Davis' firms, Davis & Saperstein and Davis & Lee, and that Davis solicits only personal injury cases. But, just as in Law–Link's ads, the focus of the ads is the easy-to-remember phone number. The text of one of Davis' television ads reads as follows:

> If you've been injured through the negligence of others, you not only need answers about your medical condition, but you should also be asking questions about your legal rights. You may be entitled to compensation. Call Davis & Lee if you've been injured in any kind of accident. Twenty-four hours a day simply *Dial L–A–W–Y–E–R–S* (touch tone sound effect). *Dialing LAWYERS* will provide you a free phone consultation to find out if you may be due a cash settlement or court award.

---

allegedly had discussions concerning affiliation four or five years ago. Transcript at 217–18. The attorney "may have" been offered an opportunity to affiliate with Law–Link at a reduced price because of the benefit his affiliation would give Law–Link in this suit. Transcript at 219. Nevertheless, he declined the invitation to affiliate with Law–Link. Plaintiffs' Exh. 12B.

**3.** The text of one of Law–Link's short television commercials is nothing more than:

> Confused about legal problems? Dial LAWYERS, L–A–W–Y–E–R–S (touch tone sound effect). Straight answers, sound advice.

Plaintiffs' Exh. 9.

Plaintiffs' Exh. 6 (emphasis added). One of Davis' radio ads reads as follows:

> Hospitals, doctors and nurses are dedicated and try to help people and usually they do but sometimes even good doctors make mistakes and when they do, a little mistake can result in tragic injury and change a person's life and health forever. If you or a member of your family has suffered such an injury, or your child was born with brain damage, or any other serious birth defect, you may be entitled to a large cash payment. To get an expert lawyer's opinion for free, simply *dial the word LAWYERS, L–A–W–Y–E–R–S* (touch tone sound effect) on your phone any time. An experienced trial attorney will protect your rights and won't charge a dime unless you receive a cash award. *Dial LAWYERS, L–A–W–Y–E–R–S* (touch tone sound effect) gives you the law firm of Bruce Davis and Associates, a team of dedicated experts who work for you. *Dial LAWYERS*, get free expert help, protect your rights.

Plaintiffs' Exh. 5A (emphasis added). As in Law–Link's ads, the number 529–9377 is never printed or shown. Dots or hyphens are inserted between each letter of the word "LAWYERS."

Anthony Page, Davis' media buyer, testified that the main means through which the public identifies Davis and his firm is the phrase "Dial LAWYERS." Transcript at 61, 63.

### C. *Midco Communications, Inc.*

Midco Communications, Inc. (Midco) is a regional telephone company based in Sioux Falls, South Dakota. Midco obtained the assignment of the 529 NXX code for 800 service, that is the right to provide 800 service using the 10,000 phone numbers beginning with the prefix 529, from Bell Communications Research, Inc. (Belcore) in June 1987. Until that time, the number

(800) 529–9377 was not available to any customer.

### II. The Assignment of (800) 529–9377

Both Murrin and Davis have had a long-standing interest in acquiring 800 service in the number which spelled "LAWYERS." As part of his efforts to secure the number, Murrin claims to have spoken with the "top authority" concerning the assignment of 800 numbers at the American Telephone & Telegraph Company (AT & T), and to have written letters to two other long distance companies as well as the Federal Communications Commission (FCC). Transcript at 202–08. These efforts were not sufficient to enable Murrin to learn who had the right to assign the (800) 529–9377. *Id.* Murrin's efforts to acquire the number largely ceased in 1984. Transcript at 204–06.

Davis also made some initial inquiries at AT & T and was told that the 529 exchange had not been activated for 800 service.[4] Davis then directed Page to pursue the assignment of the number. Page maintained contact with several long distance carriers and with Belcore and, in July 1987, learned that the 529 NXX code had been given to Midco. Davis was the first customer to contact Midco and request service on (800) 529–9377. Midco agreed to reserve that number for Davis' use.

Davis and Midco subsequently became embroiled in a dispute about how the number would be implemented and what Davis would be charged. Transcript at 122–24. In consequence, Davis filed an informal complaint before the Common Carrier Bureau of the FCC. The dispute was settled in late June or early July of 1989 and in August 1989 Midco planned to initiate limited service on the number for Davis.[5] It was at this point that Murrin finally learned, from the Chicago law firm that markets itself with "Dial LAWYERS," that

---

**4.** The facts in this paragraph were presented to the Court only through the briefs filed before the motion for a preliminary injunction was heard. Plaintiffs did not contest these facts.

**5.** Midco is currently able to provide service on (800) 529–9377 only on calls originating in

South Dakota. Transcript at 160. At some unspecified time in the future, Midco will be able to expand its service to cover calls originating in the 30 largest metropolitan areas in the United States. *Id.; see also* Transcript at 34.

Midco was the 800 service provider for the 529 exchange and that it had assigned the 529-9377 number to Davis. Davis' Memorandum of Law at 15; *see also,* Transcript at 238. Murrin moved for a temporary restraining order preventing Midco from assigning the number to Davis and the motion was granted by the Court on August 29, 1989.

*DISCUSSION*

Plaintiffs have now moved for a preliminary injunction which would either enjoin Midco from assigning (800) 529-9377 or enjoin Davis from infringing upon Murrin's service mark by advertising that number. *Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109 (8th Cir.1981). Four factors are considered on a motion for preliminary injunctive relief:

(1) the threat of irreparable harm to the movant;

(2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant;

(3) the probability that movant will succeed on the merits; and

(4) the public interest.

*Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109, 113 (8th Cir.1981). *Accord West Publishing Co. v. Mead Data Central, Inc.,* 799 F.2d 1219, 1222 (8th Cir.1986), *cert. denied,* 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987).

I.  The Assignment of (800) 529-9377

■ Midco is a common carrier. *See* Separate Answer of Midco to First Amended Complaint ¶ 8. Section 202 of the Communications Act of 1934, codified as amended at 47 U.S.C. § 202(a), prohibits common carriers from discriminating among customers with respect to "charges, practices, classifications, regulations, facilities, or services," and makes it unlawful for a common carrier to "make or give any undue or unreasonable preference or advantage to any particular person."

Midco assigned the number to Davis on a "first come, first served" basis. The practice by common carriers of allocating limited facilities on a "first come, first served"

basis has been recognized by the courts and the FCC as an appropriate method by which common carriers may discharge their duty of nondiscrimination under section 202. *See, e.g., Wold Communications, Inc. v. FCC,* 735 F.2d 1465, 1469-70 (D.C. Cir.1984); *In re Spanish International Network, Inc.,* 78 F.C.C.2d 1451 (1980). Plaintiffs, in fact, agree that Midco "must operate on a 'first-come, first-served, nondiscriminatory basis.'" Plaintiffs' Memorandum of Law in Favor of Preliminary Injunction at 37.

It is clear that Davis was the first to request from Midco assignment of (800) 529-9377. Murrin did not contact Midco until eighteen months after Davis had made his request. In spite of this fact, Murrin argues that he should be considered the "constructive" first applicant because he began making efforts to get the number earlier than Davis. Murrin cannot show the remotest probability of success on this claim. "First come, first served" is a bright line rule which makes litigation about prior efforts unnecessary and irrelevant. Davis was the first to contact Midco and request (800) 529-9377. Midco's assignment of (800) 529-9377 to Davis is proper and the temporary restraining order which enjoins Midco from "assigning and putting into operation" that number will be vacated.

II.  Whether Use of the Number (800) 529-9377 Would Infringe Upon Murrin's Service Mark in the Phrase "Dial LAWYERS"

■ In order to prevail on the merits in an action under section 43(a) of the Lanham Act, plaintiffs must prove ownership of a valid mark and a likelihood of confusion. *A.J. Canfield Co. v. Voss Beverages, Inc.,* 796 F.2d 903, 906 (7th Cir.1986). A service mark is a symbol which identifies the services of one person or business and distinguishes them from the services of others. 15 U.S.C. § 1127. The test for infringement of a registered service mark is identical to that of a registered trademark. 2 McCarthy, *Trademarks and Unfair Competition,* § 23:23 n. 12.

**1200**

### A. Ownership of a Valid Trademark

A certificate of registration serves as prima facie evidence of the registrant's ownership of the trademark. 15 U.S.C. § 1057(b). Plaintiffs have offered the certificate of registration for the phrase "DIAL L–A–W–Y–E–R–S" as their exhibit 1. Defendants have offered no evidence to rebut the presumption of validity which is accorded Murrin's mark.[6]

### B. Likelihood of Confusion

The test for trademark infringement is whether the allegedly infringing mark is "likely to cause confusion or to cause mistake, or to deceive" potential customers of the trademark owner. 15 U.S.C. § 1114(1)(b). As this Court has stated in a recent decision, "[a] likelihood of confusion exists if an appreciable number of reasonable buyers are likely to be confused by the similar marks." *Aveda Corp. v. Evita Marketing, Inc.*, 706 F.Supp. 1419, 1427 (D.Minn.1989) (citations omitted). *See, Squirtco v. Seven–Up Co.*, 628 F.2d 1086, 1091, 207 U.S.P.Q. 897, 900 (8th Cir.1980).

■ The parties dispute whether a telephone number itself is protectible as a trademark. For the purposes of this motion, it is not necessary to resolve that question of law. It is sufficient that a confusingly similar use of a telephone number can constitute either trademark infringement or unfair competition. *Dial–A–Mattress Franchise Corp. v. Page*, 880 F.2d 675, 678 (2d Cir.1989); *American Airlines, Inc. v. A 1–800–A–M–E–R–I–C–A–N Corp.*, 622 F.Supp. 673, 682–84 (N.D.Ill. 1985); *Chicago World's Fair—1992 Corp. v. The Chicago Worlds' Fair Commission*, No. 83 C 3424, slip op. (N.D.Ill. Aug. 16, 1983); *Victor Tool & Machine Corp. v. Sun Control Awnings, Inc.*, 299 F.Supp. 868, 876 (E.D.Mich.1968), *aff'd*, 411 F.2d

792 (6th Cir.1969); *see also SODIMA v. International Yogurt Co.*, 662 F.Supp. 839, 842 (D.Or.1987) (claims for trademark infringement and unfair competition by plaintiffs, holders of trademark in YO-CREME, against parties using mark YO-CREAM and telephone number (800) YO-CREAM denied on the grounds that plaintiffs had abandoned their mark).

■ Plaintiffs argue that any use of the phone number 529–9377 to advertise legal services inherently infringes upon Murrin's service mark. Plaintiffs did not, however, put forward any evidence in any form to support this argument.[7] Plaintiffs, of course, bear the burden of proving the likelihood of confusion in a trademark infringement action. *David Sherman Corp. v. Heublein, Inc.*, 340 F.2d 377, 380 (8th Cir.1965).

To the extent that the Court is able to make findings about the likelihood of confusion, those findings must be based upon a comparison of the ads currently used by Law–Link and Davis. Davis' current ads are targeted for the New York market where Davis, as a prior user, has a right to use the "Dial LAWYERS" mark. Although these ads clearly do use the telephone number in a manner confusingly similar to Murrin's mark, the ads are of little value in demonstrating how Davis would make use of the number in areas where the potential for infringing on Murrin's mark exists.

The potential for a law firm advertising itself with the number (800) LAWYERS to encroach on the mark "Dial LAWYERS" is obvious, however. The fact that Davis and Murrin independently developed such similar marketing strategies suggests that "Dial LAWYERS" may be a uniquely effective means to exploit the marketing po-

---

6. While some evidence was introduced suggesting that Murrin has abandoned his mark, that evidence did not amount to the "strict proof" necessary to support a finding of abandonment. *United States Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 138 (3d Cir.1981); *see also* 1 McCarthy, *Trademarks and Unfair Competition* § 17:5 (failure to prosecute infringers weakens a mark but generally does not constitute abandonment).

7. In fact, at the hearing, Murrin stated that he believed it was possible to make use of the "Dial LAWYERS" mark to sell legal services even if customers had to dial some phone number other than LAWYERS. Transcript at 256. This statement is at least some support for the conclusion that the mark and the phone number can be used independently.

tential of the 529–9377 telephone number. Therefore, although Davis must be given the opportunity to make use of that number in a manner consistent with the requirements of trademark law, the Court will issue a preliminary injunction to prohibit use of the (800) 529–9377 number in a manner that would infringe upon Murrin's service mark.

As stated earlier, Midco will be permitted to assign the telephone number (800) 529–9377 to Davis and to put that number into operation. Davis may use that number without restriction in the New York City metropolitan area. The Court is cognizant of Murrin's argument that Davis' rights in the mark "Dial LAWYERS" should be limited to the portion of the New York City metropolitan area within the State of New York. Such restrictions would, however, impose a hardship on Davis which greatly outweighs any benefit to Murrin.[8] The restrictions would also be very difficult to effectively enforce.

Outside the New York City metropolitan area, Davis will be enjoined from advertising or in any way using the telephone number (800) 529–9377 in conjunction with the word "dial." Davis will also be enjoined from using any symbols resembling dots or hyphens between the letters spelling the telephone number "LAWYERS." Thus, Davis is prohibited from using the phrases "Dial LAWYERS," "Dialing LAWYERS" or "Dial the word LAWYERS" in his advertising.

Accordingly, based on the foregoing, and upon all the files, records and proceedings herein,

IT IS ORDERED that:

1. the temporary restraining order issued on August 29, 1989 is vacated;

2. plaintiffs' motion for a preliminary injunction is granted; and

3. defendant Davis is enjoined from advertising or in any way using the telephone number (800) 529–9377 outside the New York City metropolitan area in conjunction with the word "dial;" and

4. defendant Davis is enjoined from advertising or in any way using the telephone number (800) 529–9377 outside the New York City metropolitan area with any symbols resembling dots or hyphens between the letters of the word "LAWYERS" when that word is used to indicate a telephone number.

---

8. Not at any point, including this action, has Murrin sought damages for infringement due to Davis' advertising in any portion of the New York market. *See* Transcript at 213–14.