**MISS DIG SYSTEM, INC., a Michigan corporation, Plaintiff,**

v.

**POWER PLUS ENGINEERING, INC., d/b/a Safeway Locating Services, a Michigan corporation, Safeway Outdoor Lighting Company (Inc.), d/b/a Power Plus Engineering, a Michigan corporation, Michael L. Mancuso, a Michigan resident, and Salvatore J. Mancuso, a Michigan resident, Defendants.**

No. 94–75108.

United States District Court, E.D. Michigan, Southern Division.

Nov. 4, 1996.

John A. Artz and Elizabeth F. Janda, Southfield, MI, for plaintiff.

Julie A. Greenberg, Birmingham, MI, for defendants.

## MEMORANDUM OPINION, ORDER, AND JUDGMENT

GILMORE, District Judge.

### I.

This case involves claims of trademark infringement and unfair competition under the

Lanham Act, 15 U.S.C. §§ 1114(a) and 1125(a), as well as claims of deceptive and unfair trade practices under the Michigan Consumer Protection Act, M.C.L. § 445.901 *et seq.*, and under Michigan common law. It is now before the court on Cross Motions for Summary Judgment by Plaintiff Miss Dig System, Inc. (hereinafter "Plaintiff") and Defendants Power Plus Engineering, Inc., Safeway Outdoor Lighting Company, Inc., Michael L. Mancuso, and Salvatore J. Mancuso (hereinafter "Defendants").

Plaintiff is a not-for-profit organization that provides a free compliance service to individuals planning excavation projects within the state of Michigan. Specifically, any individual planning such a project may contact Plaintiff in order to have the location of public utility lines within the project site marked and staked. This free service prevents property damage and disturbance to utility lines, as well as personal injury to individuals digging below the surface of the land who might otherwise come into contact with buried power sources. Plaintiff has long advertised its services using its registered trademark "Miss Dig," the related slogan "Call Miss Dig," and the telephone number 1–810–MISS–DIG. 1–810–MISS–DIG is an alphanumeric translation of Plaintiff's 1–810–647–7344 telephone number.

This case originally came before this court on Plaintiff's Motion for a Preliminary Injunction, filed on January 17, 1995. In its Motion, Plaintiff established that Defendants have acquired and do business using the toll-free telephone number 1–800–647–7344 and that Plaintiff and Defendants thus share the same "core" telephone number, 647–7344.[1] Plaintiff claimed that Defendants are misappropriating its "Miss Dig" trademark in their use of the toll-free version of the core telephone number 647–7344, despite the fact that Plaintiff's telephone number has a different prefix and despite the fact that Defendants have never advertised their services using any alphanumeric translation of their telephone number.[2]

In making its claim, Plaintiff focused this court's attention on the fact that Defendants' use of the 1–*800*–647–7344 telephone number has enabled Defendants to "intercept" a large volume of telephone calls that are intended for Plaintiff. The intercepted callers are individuals who mistakenly believe that Defendants' telephone number is Plaintiff's telephone number. In some cases, it appears that directory assistance has provided individuals with the incorrect telephone number. In other cases, it appears that individuals mistake Plaintiff's advertising to read 1–*800*–MISS–DIG rather than 1–*810*–MISS–DIG, or that they simply dial 1–800–MISS–DIG on the chance that Plaintiff has such a toll-free alphanumeric telephone number. While it appears that Plaintiff and Defendants offer related rather then competing services, Defendants have indisputably profited from their interception of the misdialed telephone calls. These interceptions present Defendants with opportunities to offer their own excavation-related services to persons engaged in excavation projects.

This court granted Plaintiff's Motion for a Preliminary Injunction on March 14, 1995, and it ordered Defendants to cease using the 1–800–647–7344 telephone number. In ruling as such, this court relied directly upon the reasoning of *Holiday Inns, Inc. v. 800 Reservation, Inc.,* 838 F.Supp. 1247 (E.D.Tenn.1993). It concluded that Plaintiff was likely to prevail on the merits of its claim that Defendants' acquisition of the 1–800–647–7734 telephone number constitutes a "use" of Plaintiff's trademark that poses a "likelihood of confusion" in violation of the Lanham Act. On October 20, 1995, Plaintiff filed a Motion for Summary Judgment. Before the hearing on Plaintiff's Motion, *Holiday Inns* was appealed to the Sixth Circuit. This court granted a continuance pending that appeal. The Sixth Circuit reversed the lower court decision in *Holiday Inns* on June 24, 1996. Defendants then filed a Cross Motion for Summary Judgment on August 8,

---

**1.** Any telephone number is comprised of a "prefix" and a "core" number. For example, the prefix of the telephone number 1–800–647–7344 is 800, and the core is 647–7344.

**2.** Defendants quite correctly point out that the 647–7344 "core" number may be translated into several thousand alphanumeric telephone numbers.

1996. The Cross Motions for Summary Judgment are now before this court.

## II.

Under F.R.Civ.P. 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." As both Plaintiff and Defendants have moved for summary judgment, they each concede that no genuine issues of material fact remain. Thus, the court need devote no time to that issue and it may proceed to judgment as a matter of law.

Plaintiff's primary claim against Defendants is of trademark infringement under the Lanham Act, 15 U.S.C. § 1114(a). This statute provides in relevant part that

> (1) Any person who shall, without the consent of the registrant (a) *use* in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered trademark in connection with the sale, offering for sale, distribution, or advertising of any goods or services or in connection with which such use is likely to cause confusion, or to cause mistake, or deceive ... shall be liable in a civil action by the registrant for ... remedies....

(emphasis added). Plaintiff also brings a claim of unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)(1). This statute provides in relevant part that

> Any person who, on or in connection with any goods or services, ... *uses* in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which (A) is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he

or she is or is likely to be damaged by such act.

(emphasis added). The Sixth Circuit has held that the standard for relief in both trademark infringement and unfair competition claims brought pursuant to the Lanham Act is the "likelihood of confusion." *Wynn Oil v. Thomas,* 839 F.2d 1183, 1186 (6th Cir.1988). However, as the language of these statutory provisions shows, in order for the court to reach the issue of the "likelihood of confusion," it must first find that the defendant in such cases has made an actual "use" of the plaintiff's trademark. In the absence of this preliminary finding, there can be no liability for trademark infringement or unfair competition under the Lanham Act.

Finally, although the parties make no more than brief mention of them, Plaintiff has also brought claims of deceptive and unfair trade practices under the Michigan Consumer Protection Act, M.C.L. § 445.901 *et seq.,* and under Michigan common law. The Michigan Consumer Protection Act provides that deceptive and unfair trade practices include

> (a) causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of the goods or services[;] (b) using deceptive representations or deceptive designations of geographic origin in connection with goods or services[; and] (c) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which do not have or that a person has sponsorship, approval, status, affiliation, or connection which he does not have.

These state-law provisions, though similar to those of the Lanham Act, are not identical to the federal law.

## III.

■ Despite the fact that this court relied directly upon the reasoning of the Eastern District of Tennessee in *Holiday Inns, Inc. v. 800 Reservation, Inc.,* in granting Plaintiff's Motion for a Preliminary Injunction, Plaintiff now argues that *Holiday Inns* may be distinguished from the present case and that this court should not rely upon it in considering the present motions for summary

judgment. This court rejects that argument and relies directly upon the Sixth Circuit decision in *Holiday Inns*. In so doing, this court GRANTS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT under 15 U.S.C. §§ 1114(a) and 1125(a) and DENIES PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT under 15 U.S.C. §§ 1114(a) and 1125(a). Furthermore, this court DENIES SUMMARY JUDGMENT ON PLAINTIFF'S STATE LAW CLAIMS as to both Plaintiff and Defendants. It also declines to retain supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 and DISMISSES PLAINTIFF'S STATE LAW CLAIMS WITHOUT PREJUDICE.

The importance of *Holiday Inns* to the present case is evident in the striking factual similarity between the two cases. In *Holiday Inns*, the plaintiff Holiday Inns, Inc., brought claims of trademark infringement and unfair competition under the Lanham Act against the defendants, 800 Reservation, Inc. *et al.* The plaintiff owned a trademark in the business name "Holiday Inn," under which it has enjoyed great business success and favorable public recognition. In addition, the plaintiff invested over twenty million dollars each year to advertise a toll-free number, 1–800–HOLIDAY, with which customers could book reservations in any of its hotels world-wide.

The action in the case arose out of the defendants' purchase and use of telephone numbers "complementary" to 1–800–HOLIDAY. "Complementary telephone number" is a euphemism for a telephone number which is dialed by individuals who misdial a particular telephone number in a predictable fashion. The defendants in *Holiday Inns* purchased the complementary telephone numbers 1–800–H[zero]LIDAY and 1–800–HOL[one]DAY. By using these complementary telephone numbers, the defendants were able to "intercept" telephone calls intended for Plaintiff from individuals who misdialed the plaintiff's telephone number by choosing the number zero rather than the letter "O," or by choosing the number one rather than the letter "I," on the telephone keypad.

The defendants purchased such complementary telephone numbers for several hotel chains and then contracted with several of those chains, including the plaintiff, to book reservations for the misdialing individuals. In some cases, the callers who were intercepted by the defendants while attempting to reach the plaintiff would be booked by the defendants into hotels owned by the plaintiff's competitors. The defendants never advertised their services using an alphanumeric translation of their telephone number, nor did they ever hold themselves out as affiliates of the plaintiff. Rather, they derived their business exclusively from individuals misdialing 1–800–HOLIDAY and other telephone numbers. Indeed, the plaintiff argued, as does Plaintiff in the present case, that the defendant purchased the disputed telephone numbers in a blatant attempt to derive business from the plaintiff's great expenditures upon the marketing of its alphanumeric telephone number.

The Sixth Circuit held that although the plaintiff may have had a valid trademark, albeit unregistered, in its own alphanumeric telephone number, it had no trademark rights in its numeric telephone number or in telephone numbers complementary to that number. The court noted that the defendants had engaged in no promotion or advertising of their services that used an alphanumeric translation of their telephone number that incorporated and displayed the plaintiff's trademark and that they had therefore made no "use" of the plaintiff's trademark as required under the Lanham Act. Furthermore, the court found that any confusion among the dialing public existed prior to the defendant's acquisition of the disputed telephone number and that the defendants did not create the confusion but were only reacting to it. In fact, the court was swayed by the argument that the defendant was actively dispelling such confusion by answering calls to the complementary telephone numbers and informing callers of their dialing errors.

The facts of *Holiday Inns* differ from those in the present case in only one [3] signifi-

3. There are two other obvious differences as

well; however, this court finds no authority

cant respect: the manner in which the defendants managed to intercept telephone calls intended for the respective plaintiffs. In *Holiday Inns,* the defendant derived its business from persons who *misdial* a telephone number actually belonging to the plaintiff. In the present case, Defendants derive their business from individuals who *correctly dial* a telephone number that they mistakenly believe to belong to Miss Dig, Inc. Despite Plaintiff's arguments to the contrary, this difference does not distinguish *Holiday Inns* from the present case. The Sixth Circuit's discussion of the Second Circuit case *Dial–A–Mattress Franchise Corp. v. Page,* 880 F.2d 675 (2d Cir.1989), makes this clear.

The facts of *Dial–A–Mattress* are not merely similar to, but nearly identical to those in the present case. In *Dial–A–Mattress,* the plaintiff had acquired and did business using the core telephone number 628–8735 with a local prefix. The plaintiff translated this core telephone number into the alphanumeric telephone number "MATTRES." It then used that alphanumeric translation in its trademark slogan "Dial–A–Mattress and Drop the Last 'S' for Savings." The defendant later purchased the toll-free version of the same core telephone number.

The facts of *Dial–A–Mattress* differ from those in the present case, however, in one significant respect. In *Dial–A–Mattress,* the defendant advertised its services with an alphanumeric translation of its telephone number which incorporated and displayed the plaintiff's trademark. In the present case, on the other hand, Defendants have never advertised their services using any alphanumeric translation of the core telephone number they share with Plaintiff, much less one incorporating and displaying the "Miss Dig" trademark.

The Sixth Circuit distinguished *Dial–A–Mattress* from *Holiday Inns,* and the basis of its distinction is enlightening. The Sixth Circuit distinguished *Dial–A–Mattress* solely

on the grounds that the defendant in that case had advertised an alphanumeric translation of its telephone number that incorporated and displayed the plaintiff's trademark. Perhaps more importantly for purposes of the present determination, the court made no mention whatsoever of the fact that the defendant in *Dial–A–Mattress* used the same core seven-digit telephone number as the plaintiff rather than a complementary telephone number when it distinguished that case from *Holiday Inns.* Thus, the very difference that Plaintiff points to support its argument that *Holiday Inns* is distinguishable from the present case was afforded no significance by the Sixth Circuit in distinguishing *Holiday Inns* from *Dial–A–Mattress.* Thus, Plaintiff's argument that that difference makes *Holiday Inns* inapplicable to the present case must fail.

█ In short, this court reads the Sixth Circuit decision in *Holiday Inns* to establish the proposition that a defendant who adopts a telephone number which permits it to intercept calls intended for the plaintiff's alphanumeric 'telephone number is not liable for trademark infringement or unfair competition under the Lanham Act if that defendant merely acquires and uses the telephone number and never undertakes any promotion of an alphanumeric translation of that number that incorporates and displays the plaintiff's trademark. Furthermore, the Sixth Circuit's discussion of *Dial–A–Mattress,* in which it accorded no significance whatsoever to the fact that the plaintiff and the defendant in that case shared the same core telephone number, demonstrates that this holding applies regardless of whether the defendant has the same core telephone number as the plaintiff or a telephone number complementary to the plaintiff's telephone number. The Sixth Circuit clearly held that the controlling factor is simply whether the defendant promotes itself using an alphanumeric transla-

---

which indicates that these differences have legal significance. First, in *Holiday Inns* the plaintiff had knowingly declined to purchase the disputed complementary telephone numbers despite the practice of many of its competitors to do so. In the present case, Plaintiff attempted to purchase the desired toll-free telephone number but was

informed that it was not available. Second, in *Holiday Inns* the plaintiff originally entered into a contract with the defendants to have the defendants book reservations for it from the intercepted callers. In the present case, Plaintiff and Defendants have never entered into any contract or agreement.

tion of its telephone number that incorporates and displays the plaintiff's trademark.[4]

Applying *Holiday Inns* to the present case,[5] this court is compelled to find, despite what it may think of Defendants' business tactics, that Defendants have not made an actual "use" of Plaintiff's trademark for purposes of the Lanham Act, 15 U.S.C. §§ 1114(a) and 1125(a). Defendants use only the telephone number 1–800–647–7344, not Plaintiff's trademark. They have never advertised their services using an alphanumeric translation of their telephone number, much less one which incorporates and displays Plaintiff's trademark.[6] Under the law of the Sixth Circuit, they are only reacting to rather than creating the confusion from which they profit. Thus, this court GRANTS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT under 15 U.S.C. §§ 1114(a) and 1125(a) and DENIES PLAINTIFF'S

MOTION FOR SUMMARY JUDGMENT under 15 U.S.C. §§ 1114(a) and 1125(a).

## IV.

Neither Plaintiff nor Defendant have engaged in any meaningful discussion of the state law claims in this case. Plaintiff makes brief mention of the fact that it is pursuing claims under both the Michigan Consumer Protection Act and under state common law, yet Plaintiff has yet to cite a single state case or to develop any argument in this regard. Furthermore, while Plaintiff has mentioned that its state law claims are governed by the same "likelihood of confusion" standard governing the Lanham Act claims, it has not shown that identical legal conclusions are merited under both the state and federal claims. Thus, this court DENIES SUMMARY JUDGMENT ON PLAINTIFF'S STATE LAW CLAIMS as to both Plaintiff

**4.** To further emphasize the controlling nature of this factor, the Sixth Circuit also briefly discusses two cases in which the plaintiffs were protected only against the active promotion of an alphanumeric telephone number displaying its trademark. First, it mentions *American Airlines, Inc. v. 1–800–A–M–E–R–I–C–A–N Corp.*, 622 F.Supp. 673 (N.D.Ill.1985). In *American*, the defendant travel agent falsely advertised itself as an airline in the Yellow Pages and listed its name as 1–800–A–M–E–R–I–C–A–N. The plaintiffs owned service marks in the name "American Airlines" and in the logo of an eagle beneath the word "American." Although the court ruled that the defendant violated the Lanham Act, it carefully articulated that the defendant's wrongful conduct consisted of the misleading use of the Yellow Pages listing and did not include the "mere use" of the telephone number itself. 622 F.Supp. at 682.

The Sixth Circuit also discusses *Murrin v. Midco Communications, Inc.*, 726 F.Supp. 1195 (D.Minn.1989). In *Murrin*, the plaintiff owned the service mark "Dial L.A.W.Y.E.R.S" when the defendant purchased the toll-free telephone number 1–800–529–9377, which could be translated into the alphanumeric telephone number 1–800–LAWYERS. The Court enjoined the defendant from advertising that alphanumeric translation of its telephone number in conjunction with the word "dial" or with dots or hyphens between the letters of the word "lawyer." The court refused, however, to enjoin the mere use of the telephone number 529–9377 by the defendant.

The Sixth Circuit stresses the fact that the court in *American* and *Murrin* found that liability could not be based on the mere ownership of any particular telephone number absent some active promotion by the defendant of an alphanumeric

translation of that telephone number that incorporates and thereby displays the plaintiff's actual trademark.

**5.** Plaintiff advances two additional arguments; however, these arguments fail to directly address the import of *Holiday Inns* or to otherwise advance Plaintiff's case. First, Plaintiff contends that Defendant's actions create significant liability for Plaintiff and that they also create public safety hazards. Defendants refute this assertion by arguing that their interceptions will improve Plaintiff's record of service by ensuring that the misdialing public is redirected to the correct telephone number by Defendants. The Sixth Circuit accepted a similar argument advanced by the defendant in *Holiday Inns*, who claimed that they would save business otherwise lost to Holiday Inns. In any case, Plaintiff offers no authority that even suggests that such considerations are relevant to the question of liability for the present claims.

In like manner, Plaintiff argues that because it is a tax-funded public service organization it is entitled to an enhanced degree of protection from trademark infringement and unfair competition. Here again, Plaintiff offers no authority in support of this argument, and this court affords it no merit.

**6.** At the hearing on the present motions, Plaintiff attempted to argue that it owns a trademark, albeit unregistered, in its "core" numeric telephone number. Plaintiff has presented no evidence whatsoever to support this claim, and the court does not find that Plaintiff has demonstrated that a genuine issue of material fact exists with regard to this issue.

and Defendant, as both have failed to demonstrate that they are entitled to judgment as a matter of law on these claims. Furthermore, this court declines to retain supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 and DISMISSES PLAINTIFF'S STATE LAW CLAIMS WITHOUT PREJUDICE.

**IT IS SO ORDERED.**