# United States Court of Appeals
### FOR THE EIGHTH CIRCUIT

_____

No. 01-3700

_____

DaimlerChrysler AG;                     &ast;
Mercedes-Benz USA, Inc.,                &ast;
                                        &ast;
   Appellants,          &ast;  Appeal from the United States
                                        &ast;  District Court for the
  v.                          &ast;  District of Minnesota.
                                        &ast;
Donald H. Bloom;                        &ast;
MBZ Communications, Inc.,               &ast;
                                        
   Appellees.

_____

Submitted: June 13, 2002.
Filed: January 9, 2003

_____

Before HANSEN, Chief Judge, FAGG and BOWMAN, Circuit Judges.

_____

HANSEN, Circuit Judge.

DaimlerChrysler and Mercedes-Benz USA appeal an adverse grant of summary judgment in this trademark action. For the reasons stated below, we affirm the judgment of the district court.[1]

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

DaimlerChrysler is the registered owner of the trademarks and service marks MERCEDES and MERCEDES-BENZ (collectively, hereinafter "Marks"). Mercedes-Benz USA is the exclusive licensee of the Marks in the United States. We refer to both of them collectively as "Mercedes."

In 1984, Donald Bloom (hereinafter "Bloom") became part owner of a Mercedes-Benz dealership in Owatonna, Minnesota. In the mid-1980s, Bloom acquired the toll-free telephone number 1-800-637-2333, one possible alphanumeric translation of which is 1-800-MERCEDES. Bloom advertised the vanity phone number in conjunction with his dealership, and he believes that the use of the phone number was a key component in reviving what had otherwise been a moribund dealership. In 1989, Mercedes granted Bloom a second dealership in St. Paul.

Between 1988 and 1992, Mercedes made several attempts to acquire the 1-800-637-2333 phone number from Bloom. The parties entered into negotiations, but the negotiations never came to fruition, and Bloom retained the rights to the phone number. On October 22, 1992, Mercedes sent Bloom a cease and desist letter stating that he could no longer use the 1-800 phone number because such use violated his Dealer Agreement.[2] In the same letter, Mercedes informed Bloom that his continued possession and use of the 1-800 phone number interfered with Mercedes' plan to use that number for its Client Assistance Center (hereinafter "CAC"). The CAC provides Mercedes customers with 24-hour, 365-days per year customer service. Because Bloom refused to relinquish his right to use the toll free number, Mercedes was forced

_____

[2]The Mercedes-Benz Communications Monitoring Service, which reviews dealer ads throughout the country to ensure compliance with Mercedes' guidelines, has praised other dealers for using the same or similar vanity phone numbers in their advertising. See J.A. at 490 (print ad using 1-800-499-4BENZ); id. at 492, 495 (print ad using 1-800-NEW-BENZ); id. at 499 (print ad using 1-800-NEW-MERCEDES); id. at 501, 503 (print ad using 1-800-4-A-MERCEDES); id. at 506, 510 (text of radio ads using 1-800-MERCEDES); id. at 508 (print ad using 1-800-MERCEDES).

to acquire and use a different telephone number, 1-800-367-6372 (1-800-FOR-MERCEDES), for the CAC.

In 1994, Bloom formed MBZ Communications (hereinafter "MBZ"). MBZ is located in Owatonna and is an independent telecommunications company that specializes in the use of vanity phone numbers. Bloom formed MBZ to manage the shared use of the 1-800-MERCEDES phone number with other Mercedes dealers throughout the country. MBZ licensed the number to six Mercedes dealers throughout the country. MBZ granted the dealers "[e]xclusive use . . . of the telephone number 1-800-637-2333 and/or its mnemonic translation within an area" defined geographically by area code and provided call pattern analysis and other marketing services to the licensee dealers in exchange for payment of an initial set up fee and additional monthly fees. (J.A. at 155.) The licensees then marketed the phone number in the agreed to areas. Through the use of call routing technology, any call made to 1-800-MERCEDES originating in a contracted for area code is automatically rerouted to the appropriate dealership. Any call originating from an area code not covered by a licensing agreement terminates at the MBZ office and is processed by MBZ personnel.

The following description is a concrete example of how MBZ's licensing system works. The House of Imports, Inc. (hereinafter "House"), a Los Angeles based Mercedes dealer, entered into a licensing agreement with MBZ for the exclusive use of the number 1-800-637-2333 in the territory falling within area codes 213, 310, 619, 714, 805, 818, and 909, which encompasses the Los Angeles and San Diego metropolitan areas. House paid MBZ an initial fee of $39,200 and agreed to make additional monthly payments of $3150 for the continued right to use the number within the agreed to area codes. House used various marketing devices to promote the vanity phone number 1-800-MERCEDES. Per the licensing agreement, any call made to 1-800-MERCEDES from the aforementioned area codes is automatically routed to House. House then services the call.

As mentioned above, a call originating from an area code not covered by a licensing agreement terminates at the MBZ office and is processed by MBZ personnel. MBZ receives approximately 100 calls per day from Mercedes customers who intend to reach the CAC but reach MBZ instead. Mercedes contends that the mere fact that people reach MBZ instead of the CAC is detrimental to Mercedes because the CAC is open 24 hours per day whereas MBZ is open only weekdays from 8 a.m. to 6 p.m. Therefore, Mercedes argues, its customers become frustrated when no one answers the phone after hours and on weekends and holidays.

In 1997, Mercedes terminated its Dealer Agreements with Bloom. In February 2000, Mercedes filed this action against Bloom and MBZ, asserting that the MBZ licensing plan violated the Lanham Act, the Federal Trademark Dilution Act, and state trademark and unfair competition laws.[3] The parties filed cross motions for summary judgment. The district court denied Mercedes' motion and granted MBZ's motion on the ground that MBZ did not "use" the Marks within the meaning of the acts. Mercedes appeals.

---

[3]The district court concluded, and the parties appear to concede, that the state law claims are coextensive with the federal claims. As such, we do not discuss them independently. See Minn. Stat. Ann. § 333.285 (West 2002) (mirroring language in 15 U.S.C. § 1125(c) (2000)); Group Health Plan, Inc. v. Phillip Morris, Inc., 68 F. Supp. 2d 1064, 1069 (D. Minn. 1999) (stating that claim for deceptive trade practices governed by Minn. Stat. § 325D.44 requires the same analysis as Lanham Act claim); Hillerich & Bradsby Co. v. Christian Bros., Inc., 943 F. Supp. 1136, 1140 (D. Minn. 1996) ("In the context of trademark infringement, the Minnesota Deceptive Trade Practices Act creates claims that mirror those under the Lanham Act."); Med. Graphics Corp. v. SensorMedics Corp., 872 F. Supp. 643, 649 (D. Minn. 1994) (stating that same analysis applies to Minnesota Deceptive Trade Practices Act claim and Lanham Act claim); DeRosier v. 5931 Business Trust, 870 F. Supp. 941, 948 n.8 (D. Minn. 1994) ("[T]he Plaintiff's infringement claim is premised upon the common law; the Lanham Act; and the Minnesota Deceptive Trade Practices Act. Despite their different origins, the elements of proof for each of these actions mirror each other and, in practical effect, tend to coalesce." (internal citations omitted)).

Mercedes asserted three federal claims against MBZ. Mercedes claimed that MBZ infringed its trademarks and service marks in violation of 15 U.S.C. § 1114. Section 1114 creates civil liability for persons who, without consent, "use in commerce any . . . colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114 (2000). Mercedes asserted a claim for false designation of origin in violation of 15 U.S.C. § 1125(a). Section 1125(a) creates civil liability for any person who "uses in commerce any . . . symbol, or device . . . or any false designation of origin, false or misleading description of fact or . . . representation of fact, which . . . is likely to cause confusion, . . . mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A). Mercedes also asserted a claim for dilution of trademark and service mark in violation of 15 U.S.C. § 1125(c). The statute provides that "[t]he owner of a famous mark shall be entitled . . . to an injunction against another person's commercial use in commerce of a mark or trade name, if such use . . . causes dilution of the distinctive quality of the mark." 15 U.S.C. § 1125(c)(1).

Each provision requires, as a prerequisite to finding liability, that the defendant "use in commerce" the protected mark or a colorable imitation thereof. See Holiday Inns, Inc. v. 800 Reservation, Inc., 86 F.3d 619, 626 (6th Cir. 1996) ("[T]he defendants' use of a protected mark or their use of a misleading representation is a prerequisite to the finding of a Lanham Act violation."), cert. denied, 519 U.S. 1093 (1997); Miss Dig Sys., Inc. v. Power Plus Eng'g, Inc., 944 F. Supp. 600, 602 (E.D. Mich. 1996) ("[A]s the language of these statutory provisions shows . . . the court . . . must first find that the defendant . . . has made an actual 'use' of the plaintiff's trademark. In the absence of this preliminary finding, there can be no liability for trademark infringement or unfair competition under the Lanham Act."). The Act

provides that "'use in commerce' means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. The statute also provides that a "mark shall be deemed to be in use in commerce . . . on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce." Id. The district court concluded that the mere licensing of a telephone number, without the active promotion or advertising of the Marks, did not constitute a "use" of Mercedes' marks. We review the district court's grant of summary judgment de novo. Luigino's Inc. v. Stouffer Corp., 170 F.3d 827, 830 (8th Cir. 1999).

There is no dispute that MBZ only licensed the phone number but did not advertise or promote Mercedes' protected marks. Mercedes argues that MBZ can be liable even though MBZ did not promote the Marks because MBZ "passed off" its services for those of Mercedes. Mercedes also argues that the advertising and promotion performed by MBZ's licensees is a "use" that can be imputed to MBZ and, independently, that the "use" requirement can be met here because MBZ intended to exploit the marks. We reject these arguments seriatim.

We note at the outset that Mercedes did not plead an independent passing off claim and only discussed passing off in its summary judgment brief as it related to the issue of confusion. Independently, the passing off claim has no merit. Passing off occurs where a company sells its goods or services under the pretense that they are the goods or services of another. See Heaton Distrib. Co. v. Union Tank Car Co., 387 F.2d 477, 484 (8th Cir. 1967). In Coca-Cola v. Overland, Inc., 692 F.2d 1250 (9th Cir. 1982), the case on which Mercedes relies, restaurant customers ordered Coke or Coca-Cola but were served Pepsi instead. Id. at 1252. Coke obtained injunctive relief against the restaurant, preventing it from serving Pepsi to a customer who had requested Coke without first informing the customer of the switch. Coca-Cola thus represents a situation where a consumer requested a specific product and was sold a competitor's product without being informed of the switch. The facts of this case are

6

dissimilar. Employees of MBZ indicated that, on occasion, if pressed by the caller, they informed callers that they had in fact reached Mercedes. The MBZ employee would then direct the caller to the CAC for further questions. At the present time, MBZ does not provide callers with the CAC number at all, but instead informs them that they have reached the wrong number. Thus, the primary flaw in Mercedes' argument is that it never identifies any good or service that MBZ sold under false pretenses. As such, Mercedes cannot prevail on a passing off claim, even if asserted.

Mercedes' argument that the licensee dealers' promotion of the vanity number should be imputed to MBZ is also without merit. Besides the facts that the licensee dealers are entitled to use the Marks under their Dealer Agreements, and that if Mercedes was truly concerned about dilution and/or infringement, it could itself prevent its dealers from wrongfully using the Marks, the cases and statutory provision on which Mercedes relies have no application to the case at hand. Pneutek, Inc. v. Scherr, 1981 WL 40499, 211 U.S.P.Q. 824 (T.T.A.B. 1981), Turner v. HMH Publ'g Co., 380 F.2d 224 (5th Cir.), cert. denied, 389 U.S. 1006 (1967), and 15 U.S.C. § 1055 only answer the question of when the use of a mark by a related company can inure to the benefit of the registrant of the mark. A related company is one whose use of the mark is controlled by the registrant of the mark. It is undisputed that MBZ's licensees are not related companies for the purposes of the statute. In addition, Mercedes has not asserted a claim for contributory infringement.

Finally, Mercedes argues that the district court erroneously looked only at advertising and promotion as indicators of use. Mercedes relies on a series of internet domain name cases, the most prominent of which is Panavision Int'l L.P. v. Toeppen, 141 F.3d 1316 (9th Cir. 1998), for the propositions that "use" is a broad term and that the intent to exploit a mark can be a "use" within the meaning of the Lanham Act. In Panavision, Panavision attempted to register the domain name Panavision.com, but could not because Toeppen had already registered that domain name. Id. at 1319. Toeppen was a cybersquatter whose "business" involved registering trademarks as

7

domain names and then selling the domain names back to the mark owners. Id. at 1325. The court concluded that Toeppen's intent to arbitrage domain names and his attempt to sell the mark was a commercial use within the meaning of the statute. Id. at 1325-26. MBZ concedes that the only value it derives from the toll-free number stems from the fact that one of its possible translations is 1-800-MERCEDES. Even so, we conclude that Panavision is distinguishable and that applying Panavision to the facts of this case would stretch the outer limits of the Lanham Act. See U-Haul Int'l, Inc. v. Kresch, 943 F. Supp. 802, 810 (E.D. Mich. 1996) ("[T]his court cannot look to the defendants' intent as a ground for a § 1125 violation, but must first find an actual use of the mark or use of a misleading representation.").

Unlike the defendant in Panavision, MBZ has not registered the mark, advertised the mark, or incorporated the mark into a web page. Furthermore, while the defendant in Panavision attempted to sell a domain name which directly and explicitly incorporated the protected mark, MBZ merely licenses a telephone number, one alphanumeric translation of which can spell 1-800-MERCEDES. Unlike the similarity between the Panavision mark and the domain name www.panavision.com, the number 1-800-637-2333 is neither phonetically nor visually similar enough to the Marks such that it could be considered a reproduction or a colorable imitation thereof. See Holiday Inns, 86 F.3d at 623 (stating that the defendants used "the phone number, 1-800-405-4329--that is, a number which is neither phonetically nor visually similar to Holiday Inn's trademark"). Mercedes argues, rather arrogantly we believe, that this phone number is the same as a domain name because everyone knows that 1-800-637-2333 really means 1-800-MERCEDES. We doubt this proposition is as self-evident as Mercedes believes. It is more probable that callers would not associate 1-800-637-2333 with Mercedes in the same way that computer users would associate www.panavision.com with the Panavision company and Panavision's protected marks. See Brookfield Communications, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1055 (9th Cir. 1999) (explaining that web users are likely to associate a web

address containing a protected mark plus "dot com" with the protected mark and the mark holder).

Although Mercedes attempts to distinguish them, we conclude that the cases actually involving vanity phone numbers are more on point than the internet domain name cases and that they demonstrate that MBZ did not actually "use" Mercedes' marks. Holiday Inns is the leading case. In that case, Holiday Inns promoted its vanity phone number, 1-800-HOLIDAY. The defendants operated an independent travel agency and hoped to capture Holiday Inns' customers. The defendants obtained the complementary phone number 1-800-H[zero]LIDAY for the sole purpose of intercepting misdialed calls from customers attempting to reach Holiday Inns. Holiday Inns, 86 F.3d at 621. The defendants did not advertise the vanity phone number, but conceded that they reaped benefits in direct proportion to Holiday Inns' advertising expenditures. The district court granted summary judgment in favor of Holiday Inns, permanently enjoining defendants from using the complementary phone number. The Sixth Circuit reversed, concluding that the defendants did not "use" Holiday Inns' mark within the meaning of the Lanham Act. Id. at 626. The court reasoned that Holiday Inns had trademark rights in its marks only and did not have rights to enjoin the operation of phone numbers whose potential translations were similar to Holiday Inns' mark. The court concluded that because the defendants never advertised or otherwise promoted the protected marks, then the defendants did not "use" the marks within the meaning of the act. Id. at 624-25. Holiday Inns is virtually indistinguishable from the present case, and we find it persuasive. The fact that MBZ is contacted by individuals who correctly dial a telephone number that they mistakenly believe belongs to Mercedes as opposed to individuals who misdial their intended number makes no difference in the outcome of this case. See Miss Dig Sys., 944 F. Supp. at 604.

Review of the vanity phone number cases reveals that the mark holder is generally not entitled to relief unless the defendant advertises or otherwise promotes

9

the alphanumeric translation of the phone number thereby causing the public to see the protected mark and associate the infringer's goods or services with those of the mark holder. Cf. U-Haul, 943 F. Supp. at 810-12 (denying relief to U-Haul, where competitor used three complementary phone numbers but did not advertise or promote the numbers, on the ground that receiving calls on complementary numbers intended for U-Haul is not a "use" of the mark within the meaning of the Lanham Act); Miss Dig System, 944 F. Supp. at 604 (denying relief where plaintiff excavation company possessed the local phone number MISS-DIG and the defendant excavation company possessed the toll free number 1-800-MISS-DIG because the defendants never advertised their services using an alphanumeric translation of the telephone number, much less one incorporating and displaying the plaintiff's trademark), with Am. Airlines, Inc. v. 1-800-Am. Corp., 622 F. Supp. 673, 686-87 (N.D. Ill. 1985) (granting preliminary injunctive relief to plaintiff against defendant travel agency where defendant advertised its vanity phone 1-800-AMERICAN in yellow pages under "Airline Companies" even though it offered no air service and specifically noting that "but for such intentionally misleading listing, [the defendant] would be free to use its name and telephone number for all legitimate purposes" (emphasis added)).

We thus conclude that the licensing of a toll-free telephone number, without more, is not a "use" within the meaning of the Lanham Act, even where one possible alphanumeric translation of such number might spell-out a protected mark. This conclusion is bolstered by those cases granting injunctive relief in favor of mark holders and against those who possess vanity phone numbers corresponding to protected marks. In those cases, the courts have fashioned limited remedies, enjoining only the advertisement of the alphanumeric translation of the number which incorporates the protected mark but not the use of the number generally. See, e.g., Kelley Blue Book v. Car-Smarts, Inc., 802 F. Supp. 278, 294 (C.D. Cal. 1992) (enjoining defendants from using the phrase "blue book" in connection with advertising or distributing automobile pricing information but not enjoining the use

of the 800 telephone number), 294 ("Injunctive relief in cases involving spelled-out telephone numbers may be narrowly fashioned.  Thus in one case where defendant's spelled-out telephone number . . . created a likelihood of confusion with plaintiff's name, the Court did not prohibit defendant from using the telephone number, but rather enjoined the defendant from advertising."); Murrin v. Midco Communications, Inc., 726 F. Supp. 1195, 1201 (D. Minn. 1989) (enjoining defendant from advertising the phone number but otherwise allowing use of number).  In accord with these cases, we conclude that the district court did not err in granting summary judgment in favor of MBZ.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

11