SAM'S RIVERSIDE, INC. d/b/a Sam's Riverside Auto Parts, Plaintiff,

v.

INTERCON SOLUTIONS, INC.; A–Reliable Auto Parts & Wreckers, Inc.; ARSHG, Inc., f/k/a Automotive Rebuilders Supply Company d/b/a AR-SCO, Defendants.

No. 4:09–CV–20 RP–RAW.

United States District Court,
S.D. Iowa,
Central Division.

June 10, 2011.

---

Kirk M. Hartung, Christine Lebron–Dykeman, Kurt R. Van Thomme, Jeffrey D. Harty, McKee Voorhees & Sease P.L.C., Des Moines, IA, for Defendants.

William W. Graham, Graham Ervanian & Cacciatore, LLP, Timothy J. Zarley, Zarley Law Firm PLC, Des Moines, IA, for Plaintiff.

1. Defendants refer to Defendant ARSHG, Inc. as "ARSCO." *See, e.g.,* Clerk's No. 130 at 1.

## MEMORANDUM OPINION AND ORDER

ROBERT W. PRATT, Chief Judge.

Currently before the Court is a "Motion for Summary Judgment" filed by Intercon Solutions, Inc. ("Intercon"), A–Reliable Auto Parts & Wreckers, Inc. ("A–Reliable"), and ARSHG, Inc. ("ARSCO" [1]) (collectively "Defendants") on October 12, 2010. Clerk's No. 123. Sam's Riverside, Inc. ("Plaintiff") filed a response in opposition to the motion on November 12, 2010. Clerk's No. 151. Defendants filed a reply on November 22, 2010. Clerk's No. 177. Plaintiff filed a sur-reply on December 3, 2010. Clerk's No. 185. Also before the Court are a number of cross-motions for partial summary judgment filed by Plaintiff on October 12, 2010. Clerk's Nos. 113 ("Motion for Partial Summary Judgment as to Liability for Cybersquatting"), 118 ("Motion for Partial Summary Judgment as to Liability for False Advertising"), 120 ("Motion for Partial Summary Judgment as to Liability for False Designation of Origin"), 129 ("Motion for Partial Summary Judgment as to Liability for *Per Se* Palming Off"). Defendants filed responses in opposition to these motions on November 12, 2010. Clerk's Nos. 150, 161, 162, 163. Plaintiff filed replies on November 19, 2010. Clerk's Nos. 168, 169, 170, 175. Plaintiff filed a supplemental brief, with leave of Court, on March 21, 2011. Clerk's No. 198; *see also* Clerk's No. 199. Defendants filed a response to the supplemental brief on April 1, 2011. Clerk's No. 203. Plaintiff filed a reply on April 6, 2011. Clerk's No. 204. Defendants filed a sur-reply, with leave of Court, on April 11, 2011. Clerk's No. 207; *see also* Clerk's No. 206. Plaintiff filed a reply to that sur-reply on April 18, 2011. Clerk's No. 210.

Therefore, the Court will do the same.

■ The Court held a hearing on these motions on March 28, 2011. Clerk's No. 202. At the hearing, the Court ordered Plaintiff to file a letter with additional factual information. *See id.* Plaintiff did so on April 6, 2011. *See* Clerk's No. 208. Defendants filed a response to that letter on April 13, 2011. Clerk's No. 209. The matters are fully submitted.[2]

## I. FACTUAL BACKGROUND [3]

### A. *The Parties*

Plaintiff is a diversified business in the automotive and truck industry. Clerk's No. 150–1 ¶ 1. Plaintiff sells, among other things, heavy duty truck parts and air cleaners. *See* Clerk's No. 151–1 ¶ 1 (referring to Plaintiff's "heavy duty truck parts, air cleaners business and heavy duty truck salvage business"). Bryan Hainline ("Hainline") is one of Plaintiff's employees. *See id.*; Clerk's No. 131 ¶ 1.

Intercon is a company currently owned by Howard Gossage ("Gossage") and Brian Brundage ("Brundage"). Clerk's No. 131 ¶ 23. Gossage originally founded Intercon as a fax service "for locating truck parts but eventually Gossage sold off the fax locating services and entered into the web marketing business." *Id.* ¶ 24. When Gossage entered the Internet marketing business, he hired his nephew, Brundage, "to run the Intercon business because Brundage was much more knowledgeable about the Internet than Gossage." *Id.* ¶ 25. Intercon does not sell heavy trucks and is not a repairable truck dealer. Clerk's No. 150–1 at ¶ 15. Intercon has never repaired trucks, had a selection of trucks on-site, or sold air cleaners. *Id.* at Resps. to ¶¶ 14, 17.

ARSCO is a company that sells truck parts "mainly to rebuilders." Clerk's No. 131 ¶¶ 33–34. ARSCO does not sell heavy trucks and is not a repairable truck dealer. Clerk's No. 150–1 at ¶ 16. ARSCO has never repaired trucks or had a selection of trucks on-site. *Id.* at Resps. to ¶¶ 14, 17. At all relevant times, ARSCO was owned solely by Howard Gossage. Clerk's No. 131 ¶ 34. On October 9, 2008, A–Reliable purchased certain assets from ARSCO. *Id.* ¶ 48. A–Reliable is a wholly-owned subsidiary of LKQ Corporation ("LKQ").[4] *Id.; see also* Clerk's No. 153 at 2.

---

**2.** A number of the documents and briefs submitted in connection with the instant motions were filed under seal. However, the Court concludes that it is not necessary to seal this opinion, as it contains no information that the Court deems to be confidential. Indeed, some of the documents that the parties filed under seal do not appear to be confidential in any way. *E.g.,* Clerk's No. 127 (consisting entirely of advertisements from various trade publications).

**3.** The Court has done its best to discern the material, undisputed facts from the parties' submissions. However, the Court's analysis of the parties' submissions has been significantly complicated (and slowed) by the fact that each side has filed appendices that are non-compliant with the Local Rules. Under the Local Rules, an appendix must be "filed as an electronic attachment to the motion *under the same docket entry.*" L.R. 56(a)(4)

(emphasis added). However, both sides have filed their appendices regarding Defendants' motion under separate docket entries, *see, e.g.,* Clerk's Nos. 132–34, 152–60, making easy reference and clear citations difficult. This problem is compounded by the fact that each side has filed separate—and separately paginated—appendices for each of the pending motions, instead of submitting a single (or at least consecutively-numbered) appendix. Therefore, the Court will not adopt the parties appendix page-numbering systems or attempt to name the various cross-appendices. Instead, the Court will cite to the relevant docket numbers and the page numbers assigned within each docket entry by CM–ECF.

**4.** The parties dispute whether A–Reliable acquired the assets or LKQ acquired the assets through its subsidiary, A–Reliable. *Compare* Clerk's No. 131 ¶¶ 21, 48 *with* Clerk's No. 151–1 ¶¶ 21, 48.

### B. Plaintiff's Asserted Mark

Plaintiff claims that, prior to 2001, it had established protectable rights in the term "Sam's Riverside." *See* Clerk's No. 120–2 ¶ 3; *see also* Hr'g Tr. 6:13–18, 9:11–17.[5] Defendants hotly dispute this assertion, arguing that, prior to 2009, Plaintiff "always identified itself on its website, in its newspaper and trade magazine advertising and on invoices as Sam's Riverside [T]ruck [P]arts or Sam's Riverside, Inc. and never used the term Sam's Riverside alone." *See* Clerk's No. 162–1 at Resp. to ¶ 3. Due to the evidentiary and other legal issues raised by the parties' arguments, the Court will discuss the facts related to this issue below in Section III(A).

### C. The Websites

In early 2001, Brundage and Hainline agreed that Intercon would "develop and maintain several websites to assist Plaintiff in marketing" its business. Clerk's No. 131 ¶ 1. Pursuant to this agreement, Brundage selected and registered three domain names: www.samstrucks.com, www.samsaircleaners.com, www.samstruck.com (collectively the "Domain Names"). *Id.* ¶ 2. Intercon also created three websites that could be accessed via the Domain Names (collectively the "Websites"). *See id.* ¶¶ 2–3.

The Websites were originally "designed to drive Internet leads to Plaintiff." *Id.* ¶ 4. The Websites contained Plaintiff's contact information but did not link directly to Plaintiff's preexisting website, located at www.samsriverside.com. *See id.* ¶ 5; *see*

*also* Clerk's No. 132–1 at 11 (Brundage Dep. Tr. 98:12–14). Instead, the Websites each contained an "email link" that allowed customers to submit questions or comments, which would be emailed to an email address managed by Intercon. *See* Clerk's No. 131 ¶ 5. The emails (referred to by the parties as "leads") were then supposed to be sent to Plaintiff.[6] However, "on two single occasions between 2001 and 2004 email leads from the Websites were sent from Intercon to ARSCO."[7] Clerk's No. 177–1 at Resp. to ¶ 26.

Intercon maintained the Websites for Plaintiff until 2004. Clerk's No. 131 ¶ 3. In January of 2004, Hainline called Brundage and informed him that "Plaintiff wanted to terminate its on-going web-management contract with Intercon." *Id.* ¶ 8. The parties dispute, however, what Hainline and Brundage said during this call regarding the future use of the Websites and the associated domain names. At his deposition, Brundage testified that Hainline told him that Intercon "could keep the sites" because they "were not working for Plaintiff." *Id.* ¶ 10 (citing Clerk's No. 132–1 at 4 (Brundage Dep. Tr. 47–48)). However, Hainline testified that he told Brundage to shut down the Websites. *See* Clerk's No. 151–2 ¶ 5 (citing Clerk's No. 152 at 8 (Hainline Dep. Tr. 107)).

Following this phone call, Brundage instructed Intercon's staff to modify the Websites to remove the references to Plaintiff.[8] Clerk's No. 131 ¶ 11. Intercon then continued to use the Websites to obtain sales leads. Clerk's No. 151–1 ¶ 15;

---

5. Citations to "Hr'g Tr." refer to the real-time transcript of the March 28, 2011 hearing that was provided to the Court by the court reporter.

6. The parties dispute whether these emails were "auto-forwarded" to Plaintiff or whether Brundage manually forwarded them. *See, e.g.,* Clerk's No. 177–1 at Resp. to ¶ 3. But although Defendants repeatedly aver that "the websites were designed to have any leads auto-forwarded to" Plaintiff, Defendants do not explain what they mean by "auto-for-

warding" or why the fact of such "auto-forwarding" would be relevant or material. *See, e.g., id.* at Resp. to ¶ 4.

7. Specifically, these emails were forwarded to "arsco1@aol.com," Gossage's email address. *See* Clerk's No. 152 at 16–17; *see also* Clerk's No. 177–1 at Resp. to ¶ 28 (not disputing that this was Gossage's email address).

8. The parties dispute whether Intercon actually did remove all of the references to Plaintiff.

Hr'g Tr. 21:10–12. When customers submitted questions or comments through the revised Websites, those leads would be directed to Brundage. *See* Clerk's No. 131 ¶ 16. Brundage would then "decide whether to forward the lead [on to] AR-SCO, one of Intercon's other web-marketing clients, or no one at all." [9] *Id.* ARSCO received at least some of those emails and may have made sales as a result of such leads. *See* Clerk's No. 177–1 at Resps. to ¶¶ 30–31.

Plaintiff discovered that the Websites were still in use in "the fall of 2008." [10] Clerk's No. 151–1 ¶ 17. In December 2008, Hainline "sent an e-mail to *info@samstruck.com* through one of the [Websites] inquiring about an engine." Clerk's No. 151–2 ¶ 18 (citing Decl. of Bryan Hainline (hereinafter the "First Hainline Declaration") ¶ 16, Oct. 9, 2010 (Clerk's No. 152 at 63)). In response, Hainline received an email from Luis Mendoza ("Mendoza"), using the email address "luis@arsco.com," stating, in full: "HI I NEED TO KNOW WHAT YOUR SERIAL# ON THE ENGINE IS. THANK YOU." Clerk's No. 154 at 68 (capitalization in original).

In January 2009, Plaintiff sent a cease-and-desist letter to Intercon, alleging trademark infringement and cybersquatting. Clerk's No. 131 ¶ 17. After Intercon received the cease-and-desist letter, Brundage shut down the Websites. *Id.* ¶ 22. Plaintiff filed this lawsuit on January 16, 2009. Clerk's No. 1. On April 28, 2009, Plaintiff filed an application to register "Sam's Riverside" as a service mark with the United States Patent and Trademark Office ("PTO"), and obtained a registration on June 29, 2010. *See* U.S. Trademark Reg. No. 3,809,187.

## II. STANDARD FOR SUMMARY JUDGMENT

The term "summary judgment" is something of a misnomer. *See* D. Brock Hornby, *Summary Judgment Without Illusions*, 13 Green Bag 2d 273 (Spring 2010). It "suggests a judicial process that is simple, abbreviated, and inexpensive," while in reality, the process is complicated, time-consuming, and expensive. [11] *Id.* at 273, 281. The complexity of the process, however, reflects the "complexity of law and life." *Id.* at 281. "Since the constitutional right to jury trial is at stake," judges must engage in a "paper-intensive and often tedious" process to "assiduously avoid deciding disputed facts or inferences" in a quest to determine whether a record contains genuine factual disputes that necessitate a trial. *Id.* at 281–82. Despite the seeming inaptness of the name, and the desire for some in the plaintiffs' bar to be rid of it, the summary judgment process is well-accepted and appears "here to stay." [12]

---

9. Plaintiff claims that Brundage also forwarded leads from the Websites to ARSCO "before the relationship with Plaintiff ended." Clerk's No. 151–1 ¶ 16.

10. Defendants assert that Plaintiff was on "actual notice" of the continued use since 2004; however, they do not seriously dispute Plaintiff's contention that it lacked actual knowledge of the continuing use until 2008. *See* Clerk's No. 177–1 at Resp. to ¶ 17.

11. Judge Hornby, a District Court judge for the District of Maine, convincingly suggests that the name "summary judgment" should

be changed to "motion for judgment without trial." 13 Green Bag 2d at 284.

12. Judge Hornby notes that over seventy years of Supreme Court jurisprudence gives no hint that the summary judgment process is unconstitutional under the Seventh Amendment. *Id.* at 281 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) and *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944)). While he recognizes that not much can be done to reduce the complexity of the summary judgment process, he nonetheless makes a strong case for improvements in it, including, amongst other

*Id.* at 281. Indeed, "judges are duty-bound to resolve legal disputes, no matter how close the call." *Id.* at 287.

■ Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."[13] "[S]ummary judgment is an extreme remedy, and one which is not to be granted unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 209 (8th Cir.1976) (citing *Windsor v. Bethesda Gen. Hosp.*, 523 F.2d 891, 893 n. 5 (8th Cir.1975)). The purpose of summary judgment is not "to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (quoting *Sartor v. Ark. Natural Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944)). Rather, it is designed to avoid "useless, expensive and time-consuming trials where there is actually no genuine, factual issue remaining to be tried." *Anderson v. Viking Pump Div., Houdaille Indus., Inc.*, 545 F.2d 1127, 1129 (8th Cir.1976) (citing *Lyons v. Bd. of Educ.*, 523 F.2d 340, 347 (8th Cir.1975)).

Federal Rule of Civil Procedure 56 mandates the entry of summary judgment upon motion after there has been adequate time for discovery. Summary judgment can be entered against a party if that party fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriately granted when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and that the moving party is therefore entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994). The Court does not weigh the evidence, nor does it make credibility determinations. The Court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Wilson v. Myers*, 823 F.2d 253, 256 (8th Cir.1987) ("Summary judgment is not designed to weed out dubious claims, but to eliminate those claims with no basis in material fact.") (citing *Weight Watchers of Quebec, Ltd. v. Weight Watchers Int'l, Inc.*, 398 F.Supp. 1047, 1055 (E.D.N.Y.1975)).

In a summary judgment motion, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact based on the plead-

---

things, improved terminology and expectations and increased pre-summary judgment court involvement. *See id.* at 283–88.

13. Federal Rule of Civil Procedure 56 was revised effective December 1, 2010. The revised rule does not change the substantive standard for summary judgment. *See* Fed. R.Civ.P. 56 advisory committee's note ("Rule 56 is revised to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged."); *see also Seacor Holdings, Inc. v. Commonwealth Ins. Co.*, 635 F.3d 675, 680 n. 8 (5th Cir.2011) ("The amended rule contains no substantive change to the standard."). All references in this Order to Rule 56 refer to the current version of the rule, unless otherwise noted.

ings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. If the moving party has carried its burden, the nonmoving party must then go beyond its original pleadings and designate specific facts showing that there remains a genuine issue of material fact that needs to be resolved by a trial. *See* Fed.R.Civ.P. 56(c). This additional showing can be by affidavits, depositions, answers to interrogatories, or the admissions on file. *Id.; Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat a motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. An issue is "genuine" if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *See id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material. . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

█ Courts do not treat summary judgment as if it were a paper trial. Therefore, a "district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir.1994). In a motion for summary judgment, the Court's job is only to decide, based on the evidentiary record that accompanies the moving and resistance filings of the parties, whether there really is any material dispute of fact that still requires a trial. *See id.* (citing *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505 and 10 Charles A. Wright & Arthur R. Miller,

*Federal Practice & Procedure* § 2712 (3d ed. 1998)).

█ Where, as here, there are cross motions for summary judgment, the parties share the burden of identifying the evidence that will facilitate this assessment. *Waldridge,* 24 F.3d at 921. "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." *Wermager v. Cormorant Twp. Bd.,* 716 F.2d 1211, 1214 (8th Cir.1983) (citations omitted). "Cross motions simply require [the Court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Barnes v. Fleet Nat. Bank,* 370 F.3d 164, 170 (1st Cir.2004) (quoting *Wightman v. Springfield Terminal Ry.,* 100 F.3d 228, 230 (1st Cir.1996)). Therefore, the Court will evaluate each of the motions "independently to determine whether there exists a genuine dispute of material fact and whether the movant is entitled to judgment as a matter of law." *See St. Luke's Methodist Hosp. v. Thompson,* 182 F.Supp.2d 765, 769 (N.D.Iowa 2001). The Court notes, however, that "[s]ummary judgments in favor of parties who have the burden of proof are rare, and rightly so." *Turner v. Ferguson,* 149 F.3d 821, 824 (8th Cir.1998).

### III. LAW AND ANALYSIS

A. *Section 43(a) of the Lanham Act*

1. *Plaintiff's burden.*

Both sides have moved for summary judgment on Plaintiff's § 43(a) claim. *See* Clerk's Nos. 120, 123. To succeed on its § 43(a) claim, Plaintiff must prove that: (1) it had a protectable common-law mark (*i.e.,* a trademark or service mark [14]) prior

---

**14.** As used in this opinion, a "trademark" is "any word, name, symbol, or device, or any

combination thereof . . . used by a person . . . to identify and distinguish his or her goods,

to the time of the alleged infringement; and (2) Defendants' actions were likely to cause confusion as to the source, sponsorship, or affiliation of Defendants' goods or services. *See First Bank v. First Bank Sys., Inc.*, 84 F.3d 1040, 1044 (8th Cir. 1996); 15 U.S.C. § 1125(a); *see also Frosty Treats Inc. v. Sony Computer Entm't Am. Inc.*, 426 F.3d 1001, 1003 (8th Cir.2005) ("Because none of the marks at issue has been federally registered ..., [the plaintiff] bears the burden of establishing that its marks are protectible under trademark law."). Defendants argue, *inter alia*, that Plaintiff cannot make a sufficient showing as to the first element—i.e., that Plaintiff cannot prove that it had a protectable interest in the term "Sam's Riverside" prior to the time of the alleged infringement. *See* Clerk's No. 130 at 14–15; Clerk's No. 177 at 2.

■ A protectable common law mark "arises from the adoption and actual use of a word, phrase, logo, or other device to identify goods or services with a particular party." *First Bank*, 84 F.3d at 1044 (citing *Co–Rect Prods., Inc. v. Marvy! Adver. Photography, Inc.*, 780 F.2d 1324, 1329 (8th Cir.1985)); *Elec. Commc'ns, Inc. v. Elec. Components for Indus. Co.*, 443 F.2d 487, 492 (8th Cir.1971) ("The right to a trademark is acquired by appropriation and use as such, and actual use in commerce in connection with the goods is necessary to the acquisition of any rights."). In other words, "[o]ne acquires common-

law mark-rights in matter by using that matter as a mark." 3 Louis Altman & Malla Pollack, CALLMANN ON UNFAIR COMP., TR. & MONO. ("CALLMANN") § 17 A:3 (4th ed.); *see also* 1 McCARTHY ON TRADEMARKS & UNFAIR COMPETITION ("McCARTHY") § 3:3 (4th ed.) ("[T]o create trademark ... rights, a designation must be proven to perform the job of identification: to identify one source and distinguish it from other sources. If it does not do this, then it is not protectable as a trademark, service mark, trade dress or any similar exclusive right." (footnote omitted)).

■ Therefore, in order to prove that it had a protectable interest in the term "Sam's Riverside," Plaintiff must prove: (1) that it actually used the term "Sam's Riverside" in connection with the sale of goods or services; and (2) that "Sam's Riverside" identified Plaintiff as the provider of those goods or services. *See First Bank*, 84 F.3d at 1044.

### 2. The parties' arguments and evidence.

In their motion for summary judgment, Defendants argue that Plaintiff "has produced no evidence to show that prior to January 2009 it ever branded itself as 'SAM'S RIVERSIDE' standing alone." Clerk's No. 130 at 15. Rather, according to Defendants,

[A]ll of [Plaintiff]'s advertising, invoices and web pages [prior to January 2009]

including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. The term "service mark" means any word, name, symbol, or device, or any combination thereof ... used by a person ... to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown." *Id.* Additionally, the term "mark" is defined as "any

trademark, service mark, collective mark, or certification mark." 15 U.S.C. § 1127. The Court is aware that, at times, the Eighth Circuit used the term "trademark" as a synonym for "mark." *See, e.g., First Bank v. First Bank Sys., Inc.*, 84 F.3d 1040, 1044 (8th Cir.1996) (referring to terms that identify both goods and services as "trademarks"). However, for the sake of analytical clarity, the Court will use these terms according to their Lanham Act definitions.

... always used the term "SAM'S RIVERSIDE" in conjunction with other terms, *e.g.,* "TRUCK PARTS," or "INC.," and ... [Plaintiff] never did anything to set off the phrase "Sam's Riverside" in any distinctive font, color, typeset or any other method (*e.g.,* use of "TM") to demonstrate its intent to function as a trademark.[15]

Clerk's No. 177 at 2; Clerk's No. 131 ¶¶ 53–54. In support of these assertions, Defendants point to a number of advertisements, invoices, and Internet screen shots (hereinafter the "Defendants' Examples"). Clerk's No. 131 ¶¶ 53–54 (citing Clerk's No. 132–1 at 71–102; Clerk's No. 133 at 1–9; Clerk's No. 133–1 at 2–9). None of the Defendants' Examples show any use of the term "Sam's Riverside," standing alone, prior to January 2009. Instead, the Defendants' Examples indicate that, at least prior to 2009, Plaintiff usually identified its business as "Sam's Riverside Truck Parts" and—in one instance—as:

### SAM'S RIVERSIDE, INC.

### D.B.A. Sam's Riverside Auto Parts • D.B.A. Sam's Riverside Truck Parts

Clerk's No. 132–1 at 92 (showing an advertisement dated "December, 2006").

■ In response, Plaintiff does not dispute the authenticity or admissibility of the Defendants' Examples or argue that the Defendants' Examples do, in fact, demonstrate use of the phrase "Sam's Riverside" as a mark.[16] *See* Clerk's No. 151 at 13–19. Instead, Plaintiff attempts to disprove Defendants' assertion that Plaintiff "never" used the phrase "Sam's Riverside," standing alone, prior to 2009. *See* Clerk's No. 151 at 13–14. Plaintiff also asserts that "throughout [its] history," it "has identified itself using the term 'Sam's Riverside.'" Clerk's No. 151–1 ¶ 53 (citing Decl. of Bryan Hainline Attached to Sam's Resistance to Defs.' Mot. for Summ. J. (hereinafter "Second Hainline Declaration") at 1–3, Nov. 12, 2010 (Clerk's No. 152 at 57–59)). In support of these arguments, Plaintiff relies upon: (1) the Second Hainline Declaration; (2) certain Internet screen shots referred to in the Second Hainline Declaration; and (3) comments made by Brundage in his deposition.[17] *See id.* Clerk's No. 151 at 13–19; Clerk's No.

---

**15.** Plaintiff admits that it "did not use the TM symbol in association with Sam's Riverside." Clerk's No. 151–1 ¶ 55. Plaintiff also does not dispute that before it filed its application to register "Sam's Riverside" with the PTO, it altered the header of the website located at www.samsriverside.com to refer to "Sam's Riverside" where, previously, it had referred to "Sam's Riverside, Inc." *Id.* ¶ 57; *see also* Clerk's No. 133–1 at 2 (showing a printout from www.samsriverside.com dated January 13, 2010); *id.* at 1 (showing a printout from www.samsriverside.com dated January 27, 2010).

**16.** Plaintiff does not argue, for example, that use of the phrase "Sam's Riverside, Inc." or "Sam's Riverside Truck Parts" would create the same commercial impression as the use of "Sam's Riverside," standing alone—i.e., that either one of these is, essentially, the same mark.

**17.** Plaintiff also suggests, in its statement of additional material facts, that its June 29, 2010 service mark registration for "Sam's Riverside" supports its claim that it "has been selling products nationally under its mark since 1969." *See* Clerk's No. 151–2 ¶ 68 (citing, *inter alia,* Clerk's No. 155 at 14 (U.S. Trademark Reg. No. 3,809,187 (hereinafter the "Certificate"))). The Certificate states that Plaintiff has claimed a date of first use of September 30, 1969. However, a federal trademark registration "is proof of use only as of its filing date, *not* the date of first use claimed" by the registrant. 2 MCCARTHY § 16:19 (emphasis added) (citing *Harvey Aluminum, Inc. v. Am. Screen Prods. Co.,* 49 C.C.P.A. 1230, 305 F.2d 479 (1962)). The Certificate lists a filing date of April 28, 2009. Therefore, while the Certificate constitutes *prima facie* evidence that Plaintiff was using "Sam's Riverside" as a service mark as of April 28, 2009, it is not evidence that Plaintiff has done so since 1969. *See id.*

151-1 ¶¶ 48-53. Defendants challenge Plaintiff's reliance on these items on various grounds. The Court will discuss each of these items in turn and then will discuss the affirmative evidence that Plaintiff submitted in its own motion for summary judgment.

### a. The Second Hainline declaration.

Defendants argue that the Second Hainline Declaration should be excluded because it is based on documents that Plaintiff did not produce in discovery—specifically, the Internet screen shots. Clerk's No. 177 at 4. According to Defendants, because those screen shots were not produced during discovery, both they and the Second Hainline Declaration should be excluded pursuant to Federal Rule of Civil Procedure 37(c)(1). See id. at 3-4. However, it is not necessary for the Court to determine whether the declaration should be excluded under Rule 37 because the Second Hainline Declaration is deficient for a much more basic reason.[18]

■ An affidavit used to oppose a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and *show* that the affiant ... is competent to testify on the matters stated." Fed. R.Civ.P. 56(c)(4) (emphasis added); Fed.

R.Civ.P. 56(e)(1) (2010) ("A supporting or opposing affidavit must be made on personal knowledge ... and show that the affiant is competent to testify on the matters stated."); see also Fed.R.Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). "In evaluating evidence related to possible summary judgment, a court may not consider affidavits that do not satisfy" the personal knowledge requirement of Rule 56. *Aucutt v. Six Flags Over Mid-Am., Inc.*, 85 F.3d 1311, 1317 (8th Cir.1996) (citing *El Deeb v. Univ. of Minn.*, 60 F.3d 423, 428-29 (8th Cir.1995) and *Cummings v. Roberts*, 628 F.2d 1065, 1068 (8th Cir. 1980)).

■ The Second Hainline Declaration does not set forth any facts that show that Hainline has personal knowledge about any of the matters discussed in that declaration. See 2d Hainline Decl. ¶¶ 1-14. For example, Hainline states that certain Internet screen shots are "true and accurate representation[s]" of certain web pages. *E.g., id.* ¶¶ 1, 4. However, the cited declaration does not state that Hainline ever visited those web pages or had any personal knowledge about the contents of the websites he mentions.[19] See id. ¶¶ 1-14.

---

**18.** It is also not necessary for the Court to decide whether any of the screen shots should be excluded pursuant to Rule 37 due to the Court's resolution of the issues discussed *infra* in Section III(A)(2)(b).

**19.** Indeed, Hainline testified in his deposition that he did not visit the Websites at all between his January 2004 phone call with Brundage and the fall of 2008. Clerk's No. 152 at 16 (Hainline Dep. Tr. 139:1-7). Therefore, by Hainline's own admission, he does *not* have personal knowledge of the content of the Websites during that time period. Thus, the Court is hard-pressed to see how Hainline might be able to testify about whether certain images are true and accurate representations

of the Websites during that period. *Compare id. with, e.g.,* 2d. Hainline Decl. ¶ 1 (stating that a certain image, shown at Clerk's No. 151 at 3, was a "true and accurate representation" of one of the Websites in September 2004). Additionally, the Second Hainline Declaration does not demonstrate that Hainline had personal knowledge about the *accuracy* of the Contested Screen Shots. See 2d Hainline Decl. at 1-3; see also Fed.R.Evid. 901. It does not indicate, for example, that Hainline personally visited Archive.org and printed—or supervised the printing of—the Contested Screen Shots. *Cf. Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F.Supp.2d 1146, 1154 (C.D.Cal.2002) (concluding that print-

The cited declaration also does not show that Hainline has personal knowledge about how Plaintiff has "identified itself" "throughout [its] history." *Compare id. with* Clerk's No. 151–1 ¶ 53 (citing 2d Hainline Decl. at 1–3 for the proposition that "throughout [its] history," Plaintiff "has identified itself using the term 'Sam's Riverside'"); *see also El Deeb*, 60 F.3d at 428 ("Affidavits asserting personal knowledge must include enough factual support to show that the affiant possesses that knowledge."). Therefore, Second Hainline Declaration does not satisfy the personal knowledge requirement of Rule 56 and the Court may not consider it. *See Aucutt*, 85 F.3d at 1317.

b. *Screen shots.*

Plaintiff asserts that it "identified itself using the term 'Sam's Riverside'" on the Websites from 2001–2004.[20] Clerk's No. 151–1 ¶ 53 (citing 2d Hainline Decl. at 1–3). Specifically, Plaintiff asserts that the phrase "Sam's Riverside" was used on the Websites in the page headings and in the tooltips.[21] *See* Clerk's No. 151 at 14. Plaintiff also asserts that it "used the 'SAM'S RIVERSIDE' mark on its main website, www.samsriverside.com which [Plaintiff] established in 1999."[22] Clerk's

outs of live websites were sufficiently authenticated by a declarant's statement that the printouts were "true and correct copies of pages printed from the Internet that were printed by [the declarant] or under his direction").

20. In their reply brief, Defendants argue that, because Plaintiff "contends that infringement began (and it is entitled to damages) as of 2001 (when Intercon first developed the Websites), [Plaintiff] cannot use those sites to demonstrate that it had already acquired trademark rights." Clerk's No. 177 at 4. Plaintiff does not respond to this argument in its sur-reply brief, *See* Clerk's No. 185. However, due to the Court's resolution of the evidentiary issues raised by Defendants, this dispute is not material.

21. "Tooltips are text areas that display automatically when the user places the cursor over predetermined text on a display device." *See* U.S. Patent No. 6,078,935 at col. 1, ll. 62–64 (filed Mar. 15, 1999); *id.* at Figs. 3–4 (illustrating the appearance of a tooltip on a web page); *see also* U.S. Patent No. 7,107,530 B 2 at col. 1, ll. 15–24 (filed Aug. 26, 2002) ("Tooltips have become an everyday source of information for a number of computer applications. Specifically, tooltips are textual or graphical labels that appear over an icon/control area in a graphical user interface (GUI). In general, a tooltip provides descriptive information about the functions of the underlying icon. Typically, a tooltip is displayed when a user points a mouse (or other input) device to the icon. When the user later se-lects the icon, moves the mouse device away from the icon, or performs some keyboard action, the tooltip is usually closed.").

22. Hainline also states that "[t]o the best of my knowledge, [Plaintiff] also used the 'SAM'S RIVERSIDE' mark on [Plaintiff's] main web page www.samsriverside.com which was established around 1999, well before [Plaintiff's] relationship with Intercon started around 2001." 2d Hainline Decl. ¶ 8. However, the Second Hainline Declaration does not demonstrate that Hainline had personal knowledge about the creation or content of the website located at www.sams riverside.com; therefore, the Court cannot consider this statement as evidence. *See Aucutt*, 85 F.3d at 1317. Even if the Court could consider this statement, it would not be sufficient to raise a genuine issue of material fact because it is not the fact of use but the character of the use that matters. *See* 1 McCarthy § 3:3 ("Not every single word, phrase, design or picture that appears on a label or in an advertisement qualifies as a protectable mark ...."); *see also* 3 Callmann § 17 A:3 (discussing the issue of "use as a mark"). Likewise, Hainline's characterization of the phrase "Sam's Riverside" as a "mark" is not sufficient to avoid summary judgment. *See generally Gander Mountain Co. v. Cabela's, Inc.,* 540 F.3d 827, 831 (8th Cir.2008) ("[A] properly supported motion for summary judgment is not defeated by self-serving affidavits." (quoting *Conolly v. Clark,* 457 F.3d 872, 876 (8th Cir.2006))).

No. 151–2 ¶ 50 (citing 2d Hainline Decl. ¶¶ 8–9). According to Plaintiff, the www.samsriverside.com website "was modified in 2000, yet continued to use the mark 'SAM'S RIVERSIDE' in a prominent manner." *Id.* ¶¶ 51–52 (citing 2d Hainline Decl. ¶¶ 10–11). In support of these assertions, Plaintiff refers to several Internet screen shots purportedly "retrieved from Archive.org" (hereinafter the "Contested Screen Shots").2d Hainline Decl. ¶¶ 9–11 (referring to the screen shots shown at Clerk's No. 151 at 13–18).

"The Internet Archive is a website that provides access to a digital library of Internet sites and other cultural artifacts in digital form." Aff. of Christopher Butler (hereinafter the "Butler Affidavit") ¶ 2 (Clerk's No. 185–3 at 11). The Internet Archive has created a service known as the "Wayback Machine" which "makes it possible [for users] to surf more than 120 billion pages stored in the Internet Archive's web archive." *Id.* ¶ 3. Specifically:

4. Visitors to the Wayback Machine can type in a URL (i.e., a website address), select a date range, and then begin surfing on an archived version of the Web. The links on the archived files, when served by the Wayback Machine, point to other archived files (whether HTML pages or images). If a visitor clicks on a link on an archived page, the Wayback Machine will serve the archived file with the closest available date to the originally requested page.

5. The Internet Archive receives data from third parties who compile the data by using software programs known as crawlers that surf the Web and automatically store copies of website files at certain points in time as they existed at that point in time. This data is donated to the Internet Archive, which preserves and provides access to it.

6. The Internet Archive assigns a URL on its site to the archived files in the format http://web.archive.org/web/[Year in yyyy] [Month in mm][Day in dd] [Time code in hh:mm:ss]/[Archived URL]. Thus, the Internet Archive URL http://web.archive.org/web/19970126045828/http://www.archive.org/ would be the URL for the record of the Internet Archive home page HTML file (http://www.archive.org/) archived on January 26, 1997 at 4:58 a.m. and 28 seconds (1997/01/26 at 04:58:28). The date assigned by the Internet Archive applies to the HTML file but not to image files linked therein. Thus images that appear on the printed page may not have been archived on the same date as the HTML file. Likewise, if a website is designed with "frames," the date assigned by the Internet Archive applies to the frameset as a whole, and not the individual pages within each frame.

*Id.* ¶¶ 4–6.[23]

Defendants argue that the Contested Screen Shots are inadmissible because, *inter alia,* they "were not properly authenticated." *See* Clerk's No. 177 at 3. In response, Plaintiff argues that it has properly authenticated the Contested Screen Shots in two separate ways. *See* Clerk's No. 185 at 1–2. First, Plaintiff argues that the Second Hainline Declaration is sufficient to authenticate the Contested Screen Shots. *See id.* at 1. The Court does not agree. As discussed above, the Second Hainline Declaration does not meet the personal knowledge re-

23. The Court notes that Butler's comments about how images are archived call into question a number of Plaintiff's infringement contentions. *E.g.,* Clerk's No. 151 at 2–3 (making arguments based on an image portion (the header) of an Archive.org screenshot without acknowledging that those images may not have been archived on the same date as the HTML text or providing information about when, in fact, such images were archived).

quirement of Rule 56. Therefore, the Court may not consider it.[24] *See Aucutt,* 85 F.3d at 1317.

■■■ Second, Plaintiff argues that it has properly authenticated the Contested Screen Shots by submitting the Butler Affidavit. *See* Clerk's No. 185 at 1–2. Christopher Butler is an employee of the Internet Archive who has personal knowledge about how the Wayback Machine works. *See* Butler Aff. ¶ 1. In his affidavit, Butler states that the six screenshots attached to that affidavit as Exhibit A are true and accurate printouts of the Internet Archive's records of the appearance of certain pages from the Websites on certain dates. *Id.* ¶¶ 8–13. Other courts have concluded that an affidavit from an Internet Archive employee is sufficient to authenticate screen shots taken from Archive.org. *See, e.g., St. Luke's Cataract & Laser Inst., P.A. v. Sanderson,* No. 8:06–CV–223, 2006 WL 1320242, at *2 (M.D.Fla.

May 12, 2006) (concluding that an affidavit by a "representative of Internet Archive with personal knowledge of its contents, verifying that the printouts Plaintiff seeks to admit are true and accurate copies of Internet Archive's records would satisfy Plaintiff's obligation to this Court."). The Court finds these cases persuasive and, therefore, concludes that the Butler Affidavit is sufficient to authenticate the specific screen shots that are mentioned in—and attached to—the Butler Affidavit.[25] *See id.*

■■■ However, none of the Contested Screen Shots are attached to the Butler Affidavit; therefore, the Butler Affidavit does not authenticate any of the Contested Screen Shots.[26] *Compare* Butler Aff. ¶¶ 8–13 *with* Clerk's No. 151 at 14–18 (showing the Contested Screen Shots). Therefore, Plaintiff may not rely upon the Contested Screen shots in order to avoid summary judgment.[27] *See Nooner v. Norris,* 594 F.3d 592, 603 (8th Cir.2010) (hold-

24. The case cited by Plaintiff does not compel a different conclusion. *See* Clerk's No. 185 at 1 (citing *Netscape Commc'ns v. ValueClick, Inc.,* 707 F.Supp.2d 640, 644 n. 6 (E.D.Va. 2010)). In *Netscape,* the witness who authenticated a document retrieved from Archive.org was the person who wrote the document and posted it online. *See* 707 F.Supp.2d at 644 n. 6. Thus, the witness had personal knowledge about the content of the archived document. *See id.* In that situation, the court concluded that the witness' testimony was sufficient to authenticate the document, notwithstanding the fact that the particular copy at issue had been retrieved from Archive.org. *Id.* (citing Fed.R.Evid. 901(b)(1)). By contrast, nothing in the Second Hainline Declaration indicates that Hainline had personal knowledge of the content of the Websites or the content of the website located at www.samsriverside.com. *See* 2d Hainline Decl. at 1–3. Therefore, *Netscape* is inapposite.

25. The Court cannot agree, however, with Plaintiff's suggestion that the Butler Affidavit is sufficient to authenticate every image that Plaintiff's counsel has identified as a screen shot from Archive.org. *See* Clerk's No. 185 at

2. Although the Butler Affidavit may be sufficient to show that records from Archive.org generally are reliable, Plaintiff must still demonstrate that the Contested Screen Shots are what they say they are—i.e., that they are true and accurate representations of Archive.org's records. *See* Fed.R.Evid. 901(a).

26. It also does not authenticate the other screen shots shown in Section II of Plaintiff's "Resistance to Defendants' Motion for Summary Judgment." *Compare* Butler Aff. ¶¶ 8–13 *with* Clerk's No. 151 at 3–6.

27. Even if the Contested Screen Shots had been properly authenticated, they would not create a genuine issue of fact because Plaintiff would still have to prove that consumers identified "Sam's Riverside" as the source of Plaintiff's services. *See First Bank,* 84 F.3d at 1045. Generally, this inquiry focuses on whether a mark is inherently distinctive or whether secondary meaning has been proven. *See id.* But even assuming, *arguendo,* that "Sam's Riverside" would be inherently distinctive for Plaintiff's retail and repair services, "even an 'inherently distinctive' word or design does not achieve trademark status unless it is used as a trademark." 1 McCar-

ing that "only evidence that would be admissible at trial may be relied upon to counter a motion for summary judgment" (quoting *Sokol & Assocs., Inc. v. Techsonic Indus., Inc.*, 495 F.3d 605, 611 n. 4 (8th Cir.2007))); *see also Specht v. Google Inc.*, 758 F.Supp.2d 570, 580 (N.D.Ill.2010) ("Because Plaintiffs did not properly authenticate them, the Court will not consider the Internet Archive[ ] printouts from Plaintiffs' Summary Judgment Exhibits....").

■ Additionally, all of the screen shots authenticated in the Butler Affidavit (hereinafter the "Authenticated Screen Shots") were taken on or after December 4, 2004. Butler Aff. ¶¶ 8–13. Although the parties dispute the exact date by which Plaintiff must establish that it had valid rights in the phrase "Sam's Riverside," Plaintiff has not seriously disputed that the alleged infringement began no later than January 2004, when Plaintiff terminated its business relationship with Intercon.[28] Because all of the Authenticated Screen Shots post-date that critical date, the Authenticated Screen Shots are not relevant to the issue of whether Plaintiff established protectable rights in the phrase "Sam's Riverside" prior to the commencement of the alleged infringement.

### c. *Brundage testimony.*

■ Plaintiff also argues that, at his deposition, Brundage "admitted that everyone knows who Sam's Riverside is." Clerk's No. 151 at 18–19; Clerk's No. 151–2 ¶ 54. Specifically, Plaintiff points to the following passage from Brundage's deposition:

A: You know, everybody knew Sam's Riverside. We were trying to throw something out there that was different and capture a different audience than people already doing business with.

Q: How do you know that everyone knew who Sam's Riverside was?

A: Because that's how they are known is Sam's Riverside.

Q: By consumers?

A: By their website, by consumers, by people that would introduce Bryan

THY § 3:3. "[A] designation is not likely to be perceived as a mark of origin unless it is repetitively used, as opposed to only occasional and isolated use." *Id.; see also Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 755 (6th Cir.1998) ("Consistent and repetitive use as an indicator of sources is the hallmark of a trademark."). Therefore, a designation claimed as a mark "must be used in a manner *sufficiently consistent* to be understood by the public as an identifying mark." Robert Lind *et al.*, 3 ENTERTAINMENT LAW 3D: LEGAL CONCEPTS AND BUSINESS PRACTICES § 17:4 (emphasis added). There is ample evidence in the record that, at least prior to January 2009, Plaintiff identified itself as "Sam's Riverside Truck Parts" and/or "Sam's Riverside, Inc." *E.g.*, Clerk's No. 127 at 1, 7. Viewed in light of this record, the Contested Screen Shots would show—at best—that Plaintiff made some "limited, sporadic, and inconsistent" use of the phrase "Sam's Riverside" during the same period that it was referring to itself as "Sam's River-

side Truck Parts" and "Sam's Riverside, Inc." *See MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 343 (4th Cir.2001). Such use is not sufficient to establish protectable rights in the phrase "Sam's Riverside." *See id.; Rock & Roll Hall of Fame*, 134 F.3d at 755; *Self–Realization Fellowship Church v. Ananda Church of Self–Realization*, 59 F.3d 902, 907 (9th Cir.1995) (concluding that specimens did "not create a genuine issue of fact about trademark use" where those specimens did not use the claimed mark "in a manner consistent enough to be an identifying mark"). The Court also notes that a number of the Contested Screen Shots show internal inconsistency in their references to Plaintiff's business. *E.g.*, Clerk's No. 151 at 14 (image on right) (showing the name "Sam's Riverside" in the header but identifying Plaintiff's company as "Sam's Riverside Truck Parts" in the text and "Sam's Riverside Truck Salvage" with the contact information).

**28.** *See supra* note 21.

[Hainline] to me as this is Bryan from Sam's Riverside.

Clerk's No. 151 at 18–19 (quoting Brundage Dep. Tr. 85:15–86:6 (Clerk's No. 151 at 40–41) (hereinafter the "Brundage Testimony")).

According to Plaintiff, the Brundage Testimony demonstrates that "at the very least there exists a disputed material fact as to whether Sam's used its mark 'SAM'S RIVERSIDE' alone." Clerk's No. 151 at 19. The Court does not agree. As an initial matter, Plaintiff has not pointed to any evidence in the record that demonstrates Brundage has personal knowledge about the thoughts or perceptions of any consumers or is in any way qualified to speak for the public at large.[29] Therefore, the Brundage Testimony is competent evidence only on the issues of Brundage's own perception of Plaintiff's website and his own experiences with the unidentified "people that would introduce Bryan" to him as "Bryan from Sam's Riverside." *See* Brundage Dep. Tr. 85:15–86:6.

Viewed in the light most favorable to Plaintiff, the Brundage Testimony demonstrates, at most, that: (1) Brundage personally perceived some portion of Plaintiff's website to, at some unidentified point, refer to Plaintiff as "Sam's Riverside"; and (2) some unidentified "people" that Brundage spoke to may have used the phrase "Sam's Riverside" to refer to Plaintiff's business in conversations. *See id.* However, neither Brundage's subjective impressions of unspecified web pages nor the use of the phrase "Sam's Riverside" by unspecified "people" in interpersonal business communications are sufficient to create a genuine issue of material fact, especially in light of the extensive evidence in the record showing that, at least prior to January 2009, Plaintiff identified itself in advertising as "Sam's Riverside, Inc." and/or "Sam's Riverside Truck Parts," not as "Sam's Riverside." *See, e.g.,* Clerk's No. 127 at 1–14. In short, the Brundage Testimony does not demonstrate that there is a genuine issue of fact as to whether Plaintiff obtained protectable rights in the term "Sam's Riverside" prior to the commencement of the alleged infringement.

### d. *Plaintiff's affirmative evidence.*

In its own motion for summary judgment, Plaintiff asserts that it "has used the mark 'SAM'S RIVERSIDE' in commerce for over 40 years, including in national publications and advertisements, and over the [I]nternet, for goods and services related to trucks and truck parts." Clerk's No. 120–1 at 11 (citing Clerk's No. 120–2 ¶¶ 15, 20); *see also* Clerk's No. 151–2 ¶ 68 (asserting that Plaintiff "has been selling products nationally under its mark since 1969").

Specifically, Plaintiff asserts that it "has used the trademark SAM'S RIVERSIDE in association with the selling of used truck parts for over 40 years," relying solely on the First Declaration of Bryan Hainline. Clerk's No. 120–2 ¶ 15 (citing 1st Hainline Decl. at 2[30]). However, nothing in that declaration demonstrates that Hainline has personal knowledge of all of Plaintiff's "promotional material and advertising" for

---

**29.** Thus, Plaintiff has not pointed to any evidence in the record that would support a finding that "the public" referred to Plaintiff's business as "Sam's Riverside" prior to the commencement of the alleged infringement. *See* 1 McCarthy § 7:18 (explaining the "public use" doctrine and noting that "[a] mere assertion that the public has come to refer to a company or product by a nickname or abbreviation is itself insufficient, in the absence of actual evidence to this effect"). The Court also notes that Plaintiff has not provided any evidence that would support a conclusion that Brundage was—or is—an expert in consumer perception.

**30.** It appears that Plaintiff meant to cite 1st Hainline Decl. at 1.

the past 40 years or about how the phrase "Sam's Riverside" was used—if at all—in such materials. *See id.* ¶¶ 1–19; *see also* Fed.R.Civ.P. 56(c)(4). Therefore, the Court may not consider Hainline's statements in support of Plaintiff's contention that it has used the phrase "Sam's Riverside" in its advertising for over 40 years.[31] *See Aucutt,* 85 F.3d at 1317.

▮▮▮▮▮▮ Plaintiff also asserts that it "has used the SAM'S RIVERSIDE mark in promotional material and advertising for many years." Clerk's No. 120–2 ¶ 20. In support of this assertion, Plaintiff cites ten advertisements Plaintiff ran in various trade publications between August 2001 and September 2009 (hereinafter the "Print Ads").[32] *Id.* (citing, *inter alia,* Clerk's No. 127 at 1–14); Clerk's No. 127

at 1–14 (showing the dates upon which the Print Ads ran). However, none of the Print Ads show any use of the phrase "Sam's Riverside," standing alone.[33] *See* Clerk's No. 127 at 1–14. To the contrary, all of the Print Ads indicate that, prior to the commencement of the alleged infringement, Plaintiff referred to its business as "Sam's Riverside Truck Parts." [34] *See id.* None of the Print Ads set off the phrase "Sam's Riverside" from "Truck Parts" by use of a "distinctive font, color, typeset or any other method." [35] *See MicroStrategy Inc. v. Motorola, Inc.,* 245 F.3d 335, 342 (4th Cir.2001). Therefore, the Print Ads do not support Plaintiff's contention that it used the phrase "Sam's Riverside" as a mark.[36] *See id.; see also* 1 MCCARTHY § 3:3 ("Some of the common markers of

---

**31.** Even if the First Hainline Declaration satisfied the personal knowledge requirement, it would not create a genuine issue of material fact because the key issue is not *if* the words "Sam's Riverside" were used in advertising, but *how* they were used. *See supra* note 23. And on this key issue, the First Hainline Declaration is silent.

**32.** Plaintiff also cites the First Hainline Declaration in support of this assertion. *See* Clerk's No. 120–2 ¶ 20. However, as discussed above, the First Hainline Declaration does not satisfy the personal knowledge requirement of Rule 56.

**33.** Additionally, because they are all dated after "early 2001," *see* Clerk's No. 131 ¶ 1, the Print Ads are not relevant to the issue of whether Plaintiff established any protectable rights prior to the creation of the Websites. Likewise, because none of the print ads are over 10 years old, they do not support Plaintiff's contention that it "has used the mark 'SAM'S RIVERSIDE' in commerce for over 40 years." *See* Clerk's No. 120–1 at 11.

**34.** One of the Print Ads, dated "December, 2006," refers to Plaintiff as "Sam's Riverside, Inc." Clerk's No. 127 at 7. Notably, this advertisement (which appears to be the same one shown in Defendant's Examples at Clerk's No. 132–1 at 92) also indicates that, as of that date, Plaintiff was doing business as

"Sam's Riverside Auto Parts" *and* as "Sam's Riverside Truck Parts." *Id.*

**35.** One of the Print Ads, dated September 2009, shows the word "Sam's" set off from the terms "Riverside" and "Truck Parts" in a larger and italicized font. *See* Clerk's No. 127 at 10. However, such use still does not constitute use of the phrase "Sam's Riverside" as a unitary mark and, at any rate, post-dates the commencement of the alleged infringement. Additionally, the Court notes that while some of the Print Ads list Plaintiff's website as "www.samsriverside.com," this does not demonstrate use of the phrase "Sam's Riverside" as a mark. *See Data Concepts, Inc. v. Digital Consulting, Inc.,* 150 F.3d 620, 627 (6th Cir.1998) (Merritt, J., concurring) ("When a domain name is used only to indicate an address on the Internet and not to identify the source of specific goods and services, the name is not functioning as a trademark." (citing, *inter alia, Lockheed Martin Corp. v. Network Solutions, Inc.,* 985 F.Supp. 949, 956 (C.D.Cal.1997))).

**36.** The Court finds this fact to be particularly troubling because Plaintiff's counsel presumably cherry-picked these particular advertisements as the best evidence they had in support of Plaintiff's claim that it used "Sam's Riverside" as a mark prior to the alleged infringement. All parties claiming protecta-

whether a word, phrase or picture is being used as a trademark are: larger-sized print, all capital letters or initial capitals, distinctive or different print style, color, and prominent position on label or advertising copy."); *In re Vicki Roberts*, 87 U.S.P.Q.2d 1474, 2008 WL 1944634, at *3–4 (T.T.A.B.2008) (noting that, in order to show a claimed mark was used in commerce, the supporting evidence must show that "a substantially exact representation" of the claimed mark was used, and rejecting the contention that documents showing use of the terms RESTMYCASE and I REST MY CASE demonstrated use of the claimed mark, IRESTMYCASE); *In re Yale Sportswear Corp.*, 88 U.S.P.Q.2d 1121, 2008 WL 2675684, at *3–5 (T.T.A.B. 2008) (non-precedential) (affirming the refusal to register the phrase UPPER 90 as a mark where the applicant actually used the phrase UPPER 90° in commerce); *In re Int'l Nickel Co.*, 48 C.C.P.A. 701, 282 F.2d 952 (1960) (concluding that evidence showing the use of the term NI–TENSY-LIRON did not demonstrate use of the claimed mark, NI–TENSYL).[37]

### 3. Conclusion.

Plaintiff has failed to submit any competent evidence that indicates it had protectable rights in the phrase "Sam's Riverside," standing alone, prior to the commencement of the alleged infringement. *See First Bank*, 84 F.3d at 1044. Therefore, the Court concludes that Plaintiff has not made "a showing sufficient to establish the existence of an element essential to its case" and Defendants are entitled to summary judgment on Plaintiff's claim under § 43(a) of the Lanham Act.[38] *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

### B. False Advertising & "Per Se Palming Off"

Plaintiff has moved for summary judgment on its false advertising and "*per se* palming off" claims. Clerk's No. 129, 188. Defendant asserts that it is entitled to summary judgment on these claims, but they have not filed proper cross-motions. *Compare* Clerk's No. 150 at 1 *and* Clerk's

ble rights in unregistered marks have the burden to prove that they have such rights. *See Frosty Treats*, 426 F.3d at 1003. Therefore, the Court expects counsel representing a party claiming rights in an unregistered mark to conduct a reasonable investigation into the validity of the claimed mark—including a reasonable inquiry into what evidence, if any, the Plaintiff has to support such a claim—prior to filing suit.

37. Although some of these cases with the specific issue of what evidence is sufficient to support (or maintain) the registration a mark, the Court finds that cases dealing with registrability are persuasive authority because "[t]o establish trademark infringement under Section 43(a), a trademark need not be registered, but it need be registrable." *Tiny Tot Sports, Inc. v. Sporty Baby, LLC*, No. 04 Civ. 4487, 2005 WL 2044944, at *3 (S.D.N.Y. Aug. 24, 2005) (citing *Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000)).

38. Defendants state, and Plaintiff does not dispute, that if Plaintiff's § 43(a) claim fails, its Iowa common law claim must also fail. *See* Clerk's No. 162 at 5 n. 4 (citing, *inter alia, DaimlerChrysler AG v. Bloom*, 315 F.3d 932, 936 n. 3 (8th Cir.2003)). Therefore, the Court concludes that because Defendants are entitled to summary judgment on Plaintiff's § 43(a) claim, they are also entitled to summary judgment on Plaintiff's state law claims. Additionally, because no reasonable juror could conclude that Plaintiff had a protectable right in the phrase "Sam's Riverside" prior to January 2004, Defendants are also entitled to summary judgment on Plaintiff's claim for cybersquatting in violation of the Anti–Cybersquatting Consumer Protection Act of 1999 ("ACPA"). *See* 15 U.S.C. § 1125(d) (creating a cause of action for "the owner of a mark"); *see also Northland Ins. Cos. v. Blaylock*, 115 F.Supp.2d 1108, 1123 (D.Minn. 2000) (discussing the elements of a cybersquatting claim).

No. 160 at 1 *with* L.R. 7(e) ("A resistance to a motion may not include a separate motion or a cross-motion by the responding party. Any separate motion or cross-motion must be filed separately as a new motion."). Nonetheless, the Court has notified the parties that it will treat Defendants' arguments as if they had been raised in proper cross-motions. *See* Hr'g Tr. 2:7–21; Fed.R.Civ.P. 56(f) ("After giving notice and a reasonable time to respond, the court may ... grant summary judgment for a nonmovant....").

#### 1. *False advertising.*

Plaintiff claims that, during the Plaintiff's business relationship with Intercon, the Websites contained a number of advertising claims that "emphasized that [Plaintiff], in addition to selling truck parts, was a late model salvage and repairable truck dealer and that [Plaintiff] had a 'huge selection' of trucks onsite." Clerk's No. 118–1 at 3. According to Plaintiff, following the termination of its business relationship with Intercon, "Intercon made no changes to the copy of the [W]ebsites." *See id.* at 4. Specifically, Plaintiff identifies five different statements in that copy (hereinafter "the Challenged Statements") that, according to Plaintiff, Intercon did not change: (1) "Huge selection onsite"; (2) "Late model salvage and repairable truck dealer"; (3) "At Sam's Truck Parts, we offer a wide selection of heavy duty trucks. Listed below is a sample of the types of heavy duty trucks available at Sam's Truck Parts."; (4) "If you have questions or would like to purchase any trucks, please go to our Contact Us page and fill in our online form."; and (5) "We are one of the country's best sources for heavy duty trucks and parts." *See* Clerk's No. 118–1 at 7–9.

Plaintiff argues that, by keeping the Challenged Statements on the Websites following the termination of Plaintiff's business relationship with Intercon, "Defendants represented that they (1) were a late model salvage and repairable truck dealer; (2) sold heavy duty trucks; and (3) had heavy duty trucks onsite." *Id.* at 9. According to Plaintiff, these three representations are literally false.[39] *Id.* at 9. Therefore, according to Plaintiff, the retention of the Challenged Statements constitutes false advertising. *See id.* at 4–5.

To prevail upon its claim for false advertising in violation of the Lanham Act, Plaintiff must prove that: (1) Defendants made "a false statement of fact ... in a commercial advertisement about [their] own or another's product;" (2) "the statement actually deceived or has the tendency to deceive a substantial segment of its audience"; (3) "the deception is material, in that it is likely to influence the purchasing decision"; (4) Defendants "caused [the] false statement to enter interstate commerce"; and (5) Plaintiff "has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to [Defendants] or by a loss of goodwill associated with its products." *See United Indus. Corp. v. Clorox Co.,* 140 F.3d 1175, 1180 (8th Cir. 1998). "In addition, to recover money damages under the Act, a plaintiff must prove both actual damages and a causal link between defendant's violation and those damages." *Id.* (internal quotation mark omitted).

Defendants argue that Plaintiff "cannot prove the elements of its [false advertising] claim," and, thus, Defendants

---

**39.** However, the relevant issue here is whether the actual statements allegedly made by Defendants—not Plaintiff's interpretations thereof—are literally false. *See generally United Indus. Corp. v. Clorox Co.,* 140 F.3d 1175, 1180 (8th Cir.1998) (defining the test in terms of the "statements" made by a defendant, not in terms of a plaintiff's characterizations or interpretations thereof).

are entitled to summary judgment. *See* Clerk's No. 150 at 6. Defendants argue, *inter alia*, that Plaintiff has failed to make a showing sufficient to establish the second element listed above—i.e., that the Challenged Statements actually deceived or had the tendency to deceive consumers.[40] *See id.* at 9–10. Plaintiff argues that it is entitled to a presumption of consumer deception and that "there is undisputed evidence of actual consumer deception." Clerk's No. 118–1 at 10–11. The Court will address each of these arguments in turn.

### a. Is Plaintiff entitled to a presumption of consumer deception?

■■■ Plaintiff argues that it is entitled to a presumption of deception because, according to Plaintiff, the Challenged Statements are literally false.[41] Clerk's No. 118–1 at 10–11 (citing *EFCO Corp. v. Symons Corp.*, 219 F.3d 734, 740 (8th Cir. 2000)). The Court does not agree. In *Everest Capital Ltd. v. Everest Funds Management L.C.C.*, the Eighth Circuit rejected a nearly identical argument. *See* 393 F.3d 755, 764 (8th Cir.2005). In *Everest Capital*, the defendant claimed on its website that it provided "professional portfolio management of equity portfolios for high net worth individuals and families, endowments, foundations, and corporate retirement plans." *Id.* However, at trial, the defendant's founder admitted that the defendant "provided no such services." *Id.* Thus, the claim at issue in *Everest*

**40.** Defendants also argue that neither ARSCO nor A–Reliable can be held liable for the Challenged Statements. Clerk's No. 150 at 1 (arguing that "neither ARSCO nor A–Reliable ever made any false statements on their own behalf, and there is no evidence to show that Intercon was at any time acting as an agent for either ARSCO or A–Reliable"); *see also Clorox Co.*, 140 F.3d at 1180 (stating that a plaintiff must prove, *inter alia*, "false statement of fact *by the defendant*" in order to prevail on a claim for false advertising against that defendant (emphasis added)). Plaintiff disputes this contention—indeed, the issue of whether or not Intercon ever acted as an agent of either ARSCO or A–Reliable is one of the most hotly disputed factual issues in this case. However, this dispute is not material to the resolution of the parties' arguments regarding Plaintiff's claim for false advertising.

**41.** In order to streamline this analysis, the Court will assume, *arguendo*, that the Challenged Statements appeared on at least one of the Websites after January 2004 and that at least one of the Challenged Statements is literally false. However, the Court notes that these are both large—and highly questionable—assumptions. As an initial matter, Plaintiff has not attempted to authenticate any of the screen shots that it relies upon to prove that the Challenged Statements were, in fact, made on the Websites following Janu-

ary 2004. *See* Clerk's No. 118–1 at 7–9. It may be that some of these screen shots are the same as those authenticated in the Butler Affidavit; however, "it is *not* the duty of the courts to scour a record" at the summary judgment stage or to try to guess what Plaintiff is attempting to refer to; rather, litigants must provide the Court with adequate and clear citations to the record. *See Barth v. Village of Mokena*, No. 03 C 6677, 2006 WL 862673, at *19 (N.D.Ill. Mar. 31, 2006) (emphasis in original). Also, because none of the Challenged Statements refer to Intercon, ARSCO, or A–Reliable, their connection to Defendants are—at best—attenuated. *See generally Clorox Co.*, 140 F.3d at 1180 ("The greater the degree to which a message relies upon the viewer or consumer to integrate its components and draw the apparent conclusion, however, the less likely it is that a finding of literal falsity will be supported. Commercial claims that are implicit, attenuated, or merely suggestive usually cannot fairly be characterized as literally false."). Indeed, the Court has grave doubts about whether Plaintiff could prove that a reasonable consumer would perceive the Challenged Statements to be factual statements about Defendants' goods or services. Nonetheless, the Court concludes that a detailed discussion of all of the problems with Plaintiff's false advertising claim is neither necessary nor a prudent use of scarce judicial resources.

*Capital* was literally false.[42] *See id.* Nonetheless, in *Everest Capital,* the Eighth Circuit rejected "as contrary to law" the plaintiff's "contention that the district court abused its discretion by refusing to instruct the jury that a 'literally false' statement is presumed to be likely to deceive." 393 F.3d at 764. Therefore, the Court cannot agree with Plaintiff that consumer deception must be presumed when claims are found to be literally false. Accordingly, Plaintiff is not entitled to a presumption of consumer deception.[43]

### b. Is there evidence of actual or likely consumer deception?

 Plaintiff argues that, even if it were not entitled to a presumption of consumer deception, it has still demonstrated that the Challenged Statements actually deceived consumers. *See* Clerk's No. 118–1 at 11. In support of this argument, Plaintiff points to a single email. *Id.* (citing Clerk's No. 119–1 at 31). The parties do not dispute that on August 26, 2008, an individual sent an email to "clientservices@samstruckparts.com," stating: "Brian, I looked at # PVA29857 F700 around state fair time. Has that truck run lately? How bad is the box, will it drive home?"[44] Clerk's No. 119–1 at 31; *see also* Clerk's No. 150–1 at Resp. to ¶ 19. According to Plaintiff, this email (hereinafter the "State Fair Email"), refers to "a Ford F700 heavy truck that is still in [Plaintiff's] possession." Clerk's No. 118–1 at 12 (citing Clerk's No. 118–2 ¶ 21). Plaintiff also asserts that the individual who wrote the email (hereinafter the "Customer") visited Plaintiff's facility "around state fair time."[45] *Id.* (citing Clerk's No. 118–2 ¶ 22). Plaintiff argues that the State Fair Email "shows that [the Customer] was misled into believing that he was

---

**42.** It was also analogous to Plaintiff's claim in this case. Clerk's No. 169 at 3 (arguing that "Defendants advertised goods and services they did not provide").

**43.** Plaintiff's citation to *EFCO Corp. v. Symons Corp.* does not compel a different conclusion. *See* Clerk's No. 169 at 3 (citing 219 F.3d at 740). In *EFCO,* the Eighth Circuit stated that "when an advertisement is literally false (as opposed to implicitly deceptive), the plaintiff need not prove that any of its consumers were actually persuaded by the advertising." 219 F.3d at 740. However, the Eighth Circuit made this statement in its discussion of a different element—namely, whether the plaintiff had proven "that its damages were causally related to [the defendant's] misconduct." *Id.; see also Clorox Co.,* 140 F.3d at 1180 (listing deception and damages as distinct elements of a false advertising claim). Therefore, *EFCO* cannot fairly be read to support the proposition that a finding of literal falsity relieves a plaintiff of the burden of proving deception, regardless of the nature of the claim or any of the other facts in the case. Additionally, *EFCO* is factually distinguishable from the instant case because *EFCO* involved comparative advertising. 219 F.3d at 739–40; *see also* 1 A CALLMANN § 5:23

("The general rule in private litigation is that if advertising is false on its face, then injunctive relief may be granted without reference to extrinsic evidence establishing that consumers were actually misled. . . . But that presumption has been limited to cases involving comparative advertising . . . ." (footnotes omitted)).

**44.** Defendants do, however, dispute the admissibility of this email, arguing that it constitutes inadmissible hearsay. *See* Clerk's No. 150 at 9. The Court agrees in part. To the extent that this email is being offered to prove that a customer actually "looked at # PVA29857 F700 around state fair time," it is hearsay and is not admissible. *See* Fed. R.Evid. 801(c); Fed.R.Evid. 802. However, to the extent that Plaintiff is offering the email to show the effect of the Challenged Statements on the email's author, it is not being offered "to prove the truth of the matter asserted," and thus is not hearsay. Fed.R.Evid. 801(c).

**45.** Defendants also challenge this assertion. *See* Clerk's No. 150–1 at Resp. to ¶ 22. However, this dispute is not material to the resolution of the parties' arguments regarding Plaintiff's claim for false advertising.

dealing with an entity that not only was selling trucks, but that had trucks onsite." *Id.*

■ The Court does not agree with Plaintiff that the State Fair Email is evidence that consumers were—or were likely to—be deceived by the Challenged Statements. Nothing on the face of the State Fair Email refers to any of the Challenged Statements. Clerk's No. 119–1 at 31. And Plaintiff has not pointed to any evidence that links the State Fair Email to the Challenged Statements in any concrete way.[46] *Cf. Balance Dynamics Corp. v. Schmitt Indus., Inc.,* 204 F.3d 683, 696 (6th Cir.2000) (indicating that, where customers contacted an advertiser "in *reference to* its [allegedly false] claims," such inquiries "may suffice to show that the deception was material and likely to influence a purchasing decision" (emphasis

added)). Instead, Plaintiff's contention that the State Fair Email resulted from—or was, in some way, related to—the Challenged Statements appears to be nothing more than speculation and, as such, is not sufficient to avoid summary judgment. *See Doe v. Dep't of Veterans Affairs,* 519 F.3d 456, 460 (8th Cir.2008) ("In order to create an issue for trial the nonmoving party must produce sufficient evidence to support a verdict in [its] favor based on more than 'speculation, conjecture, or fantasy.'" (quoting *Putman v. Unity Health Sys.,* 348 F.3d 732, 733–34 (8th Cir.2003)). In short, Plaintiff has not pointed to any competent evidence that consumers were—or were likely to be—deceived by the Challenged Statements. Thus, Plaintiff has failed to make "a showing sufficient to establish the existence of an element essential to its case" and Defendants are entitled to summary judgment on Plaintiff's claim for false advertising.[47]

**46.** Moreover, even if the State Fair Email demonstrates, as Plaintiff urges, that the Customer "believed that the entity behind [the Websites] not only sold trucks but also that they had trucks on site," that would not be sufficient to either carry Plaintiff's burden or create a genuine issue of fact. In order to prevail on its false advertising claim, Plaintiff must prove that the Challenged Statements "actually deceived or has the tendency to deceive a *substantial segment* of its audience." *Clorox Co.,* 140 F.3d at 1180 (emphasis added). The subjective impression of a single consumer is not probative evidence on whether a "substantial segment" of consumers would be likely to be deceived.

**47.** Even if Plaintiff had shown that there was a genuine issue of fact regarding the requirement of consumer deception, the Court would still conclude that Defendants were entitled to summary judgment due to a lack of materiality. *See Clorox Co.,* 140 F.3d at 1180 (noting that, in order to prevail on a false advertising claim, a plaintiff must prove, *inter alia,* that "the deception is material, in that it is likely to influence the purchasing decision"). Plaintiff argues that it is entitled to a presumption of materiality because the Challenged Statements are literally false. Clerk's No. 118–1 at 12 (citing, *inter alia,* Rhone–

*Poulenc Rorer Pharms., Inc. v. Marion Merrell Dow, Inc.,* 93 F.3d 511, 516 (8th Cir.1996)). The Court does not agree. It is true that, in *Rhone–Poulenc,* the Eighth Court stated that because the statement at issue in that case "was literally false, the issue became one of remedy—what corrective advertising would be appropriate." *Id.* However, this statement says nothing about materiality *per se. See id.* It certainly does not say that materiality must be presumed for every literally false statement made in any advertising. *See id.; see also Johnson & Johnson Vision Care, Inc. v. 1–800 Contacts, Inc.,* 299 F.3d 1242, 1250–51 (11th Cir.2002) (agreeing with the First and Second Circuit that a "plaintiff must establish materiality even when a defendant's advertisement is literally false").

Plaintiff also argues that there are two pieces of evidence demonstrating "that Defendants' deception was likely to influence the purchasing decision." *See* Clerk's No. 118–1 at 13. First, Plaintiff points to a portion of Brundage's deposition testimony where Brundage discussed why he added the Challenged Statements to the Websites when he designed them for Plaintiff. *Id.* (referring to Clerk's No. 119–1 at 9). However, this testimony does not indicate that Brundage is an expert on marketing or is otherwise qualified to opine on the issue of consumer perception.

*See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548).

### 2. "Per se *palming off.*"

Plaintiff claims that Intercon has violated the Lanham Act by using a photograph of certain air cleaners on one of the Websites, www.samsaircleaners.com, after January 2004 and on a separate website located at www.truckaircleaners.com since 2001 (collectively the "Air Cleaner Websites"). Clerk's No. 129–1 at 2, 5–7; Clerk's No. 170 at 1 (clarifying that Plaintiff is asserting this claim against Intercon only). According to Plaintiff, this photograph depicts an air cleaner that is exclusively made for and sold by Plaintiff (hereinafter the "Special Air Cleaners").[48] Clerk's No. 129–1 at 2. Plaintiff insists that, by using this photograph on the Air Cleaner Websites, Intercon has falsely represented that it sells the Special Air Cleaners and that, therefore, Intercon committed *"per se* palming off." *Id.* at 7.

 As an initial matter, the phrase *"per se* palming off" appears to have been coined by Plaintiff. Plaintiff has not cited—and the Court is not aware of—any cases using that particular phrase. How-ever, it is well-established in this Circuit that "palming off" (also known as "passing off") "occurs where a company sells its goods or services under the pretense that they are the goods or services of another." *DaimlerChrysler AG v. Bloom,* 315 F.3d 932, 937 (8th Cir.2003); *see also* 4 McCarthy § 25:1 (noting that "palming off" and "passing off" are synonyms).

 In order to prevail on a claim for passing off, Plaintiff must, *inter alia,* identify a good or service that Intercon sold under false pretenses. *See Daimler-Chrysler,* 315 F.3d at 937 ("[T]he primary flaw in Mercedes' argument is that it never identifies any good or service that MBZ sold under false pretenses. As such, Mercedes *cannot prevail* on a passing off claim . . . ." (emphasis added)). In this case, Plaintiff does not argue that Intercon actually sells air cleaners—or any goods at all. Instead, Plaintiff argues that Intercon intended to "deliver the air cleaners of another" because it "forwarded sales leads from the website www.samsaircleaners. com to [Plaintiff's] direct competitor Fleet Truck Parts." Clerk's No. 170 at 3. However, "divert[ing] sales leads" is not the same as selling goods under false pretenses.[49] *Compare id. with DaimlerChrys-*

---

Therefore, the Court cannot agree that the cited testimony is evidence of materiality. Second, Plaintiff argues that the State Fair email shows that "Brundage was successful in influencing a purchasing decision" by the continued use of the Challenged Statements. *See id.* The Court does not agree. Nothing in the State Fair email indicates that the Customer (or any other consumer) actually made any purchasing decision—let alone a purchasing decision that was influenced by any of the Challenged Statements. Therefore, Plaintiff has failed to demonstrate that there is any evidence of materiality and Defendants are entitled to summary judgment for this independent reason. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

**48.** Defendants dispute Plaintiff's evidentiary support for this point and various other factual assertions made by Plaintiff in support of its passing off claim. However, the Court does not deem it necessary to resolve the evidentiary disputes raised by the parties and will assume, *arguendo,* that the Special Air Cleaners were made exclusively for Plaintiff and that Intercon did use photographs of the Special Air Cleaners on the Air Cleaner Websites.

**49.** Additionally, Plaintiff has not pointed to any evidence indicating that Fleet Truck Parts ever actually sold air cleaners to any customers who submitted inquiries via the Air Cleaner Websites—let alone any evidence that, during the course of such a sale, Fleet Truck Parts (or Intercon) ever represented that they were selling the Special Air Cleaners. There is also no evidence in the record indicating that Intercon could be held legally liable for any such hypothetical sales by Fleet Truck Parts. For example, there is no suggestion in the record that, at any time, Fleet Truck Parts was acting as Intercon's agent.

*ler*, 315 F.3d at 937. Because Plaintiff has not identified any good or service that Intercon itself sold under false pretenses, its claim for passing off must fail.[50] *See DaimlerChrysler*, 315 F.3d at 937. Thus, Plaintiff has failed to make "a showing sufficient to establish the existence of an element essential to its case" and Defendants are entitled to summary judgment on Plaintiff's claim for passing off. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

## IV. CONCLUSION

For the foregoing reasons, Defendants' "Motion for Summary Judgment" (Clerk's No. 123) is GRANTED and Plaintiff's Motions for Partial Summary Judgment (Clerk's Nos. 113, 118, 120, 129) are DENIED. Accordingly, the Court finds that Defendants' motions *in limine* (Clerk's Nos. 211, 212, 213, 214, 216) are MOOT. The Clerk of Court shall enter judgment for Defendants and against Plaintiff on all claims.

IT IS SO ORDERED.

50. Plaintiff has made no attempt to distinguish *DaimlerChrysler* or to explain why the rule of *DaimlerChrysler* should not apply in this case. *See* Clerk's No. 170 at 2–3. Instead, Plaintiff insists that this Court must adopt the formulation of the implied passing off test that was stated in *Supelco, Inc. v. Alltech Assocs., Inc. See* Clerk's No. 129–1 at 5 (citing No. 86–2484, 1986 WL 9282 (E.D.Pa. Aug. 27, 1986)). However, *Supelco* is neither binding nor persuasive authority. Indeed, *Supelco* is factually distinguishable from the instant case. In *Supelco*, the defendant used a photograph of the plaintiff's product in a point-of-sale display—specifically, in a catalog. *See* 1986 WL 9282, at *5. In this case, by contrast, there is no evidence that the Air Cleaner Websites constituted point-of-sale displays or were in any way equivalent to the catalog in *Supelco*. The other case cited by Plaintiff, *Heaton Distributing Co. v. Union Tank Car Co., see* Clerk's No. 170 at 3, is distinguishable for the same reason. *See* 387 F.2d 477, 483 (8th Cir.1967) (finding liability where the defendants' representatives "capitalized on the reputation and good will of Lindsay to gain entrance to the premises, often showed the customers Lindsay brochures, sold them what they thought was a Lindsay unit, wrote the order up on a Lindsay order blank, and then delivered a Water King unit").